[No. G037612. Fourth Dist., Div. Three. Sept. 19, 2007.]

ANITA MARCARIO, Plaintiff and Appellant, v.
COUNTY OF ORANGE et al., Defendants and Respondents.

COUNSEL

Mark Rosen for Plaintiff and Appellant.

Koeller Nebeker Carlson & Haluck, William L. Haluck; Benjamin P. de Mayo, County Counsel, and Wanda S. Florence, Deputy County Counsel, for Defendants and Respondents.

OPINION

**BEDSWORTH, Acting P. J.**—Anita Marcario appeals from a judgment on the pleadings entered in favor of her employer, the County of Orange.[1] The trial court concluded the resolution of an earlier labor grievance, pursued through a "binding" arbitration in accordance with the terms of a memorandum of understanding (MOU) between the County and Marcario's union, precluded Marcario's claim for damages based upon retaliation in violation of the Labor Code, and her remaining two claims were barred by the applicable statute of limitations. Marcario argues the court erred, because the arbitration of her labor grievance could not be given binding effect with regard to statutory claims unless the MOU clearly specified that it would be; and any statutes of limitations were tolled during the time she participated in the internal grievance procedure.

 ■   We agree with Marcario on both counts. A significant number of California appellate courts have already held that the arbitration of a labor grievance, conducted pursuant to the terms of a collective bargaining agreement, cannot have binding effect as against the employee's claims for violation of statute, unless the agreement states explicitly that it will. The MOU in this case said no such thing. The County's argument to the contrary is based upon cases which are distinguishable. Rather than addressing the effect of a labor arbitration such as the one which occurred in this case, the County's cases consider the binding effect of findings made at an administrative civil service hearing, after which the employee would have a right to petition the court for a writ of mandate. Those cases are inapposite.

As for the tolling issue, Marcario correctly points out that equitable tolling should be applied whenever (1) a plaintiff pursues one of several available remedies in good faith; and (2) defendant is not prejudiced. Because this case was resolved on a motion for judgment on the pleadings, there was simply no evidence from which the court might have properly drawn the conclusion that Marcario was not entitled to such tolling.

The judgment is reversed, and the case remanded for further proceedings.

\* \* \*

---

[1] In addition to the county, Marcario also named as defendants two individuals, Robert Griffith and Robert Sayers. For convenience, we refer to defendants collectively as "the County."

According to her first amended complaint,[2] Marcario was hired by the County in 1988, and was promoted to the position of "Secretary I" fairly quickly after her employment commenced. She received excellent performance reviews.

Then, in 1993, Marcario obtained a grant from the County's Housing and Community Redevelopment Department (HCD) to use in rehabilitating her home. The HCD, although administered by the County, is funded through block grants from the federal Department of Housing and Urban Development.

Unfortunately, Marcario encountered significant problems with the contractors selected by HCD, and the work performed was not in compliance with code requirements. Marcario complained, and discovered that hers was not an isolated example of substandard work. Instead, it appeared that contractors chosen by the County to work on HCD projects had a pattern of performing substandard work, to maximize their own profits, and that the inspectors sent by the HCD were both unqualified to properly assess the quality of the work, and primarily concerned with simply getting the homeowner to "sign off" on the job. Marcario's complaints and investigation generated substantial publicity.

In 1998, Marcario filed a qui tam action in the United States District Court, against the County and several contractors, based upon the alleged misuse of federal funds. The action was settled in November of 1999, and Marcario thereafter submitted ancillary claims which were resolved in 2001.

As a result of Marcario's complaints, and the negative publicity they generated, the County retaliated against her in connection with her employment. Marcario was turned down for several placements within the Secretary I level, despite her excellent performance reviews. In October of 2000, she was transferred to the Children and Family Division of the County's Social Services Agency. She was put to work as an "Information Processing Technician" (IPT)—which does not require all of the skills of a Secretary I, but was compensated at the same rate of pay. Marcario initially retained the classification of a Secretary I.

---

[2] Because this appeal is from a judgment on the pleadings, we take our facts from Marcario's complaint, and from the facts to which the parties stipulated at trial. This may make it sound like we are evaluating the merits of her case, so we hasten to point out we are not. We merely adopt them for purposes of the appeal because of the procedural posture of the case. "[I]n evaluating the propriety of a grant of judgment on the pleadings, our review is de novo, and we independently determine whether the complaint states facts sufficient to constitute a cause of action." (*Sprague v. County of San Diego* (2003) 106 Cal.App.4th 119, 127 [130 Cal.Rptr.2d 517], citing *Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515–516 [101 Cal.Rptr.2d 470, 12 P.3d 720].)

However, in June of 2001, Marcario was notified that her job had been reclassified and she was thereafter an IPT. She also learned pursuant to a salary adjustment scheduled to take place the next day, the IPT position would be compensated at a rate 5.5 percent lower than Secretary I. Had the change in her classification taken place on or after the effective date of the salary adjustment, Marcario would have been entitled to salary protection pursuant to the MOU.

Since her job reclassification and salary reduction, Marcario has been repeatedly denied the opportunity to transfer to a new position as Secretary I, even though potential supervisors to whom she could have been assigned requested her.

In July of 2001, Marcario filed a grievance under the 1998 MOU between her union and the County, challenging her reassignment and demotion. The MOU makes no specific reference to grievances being pursued in connection with statutory violations, providing instead that "[a] grievance may be filed if a management interpretation or application of the provisions of this [MOU] adversely affects an employee's wages, hours or conditions of employment." The grievance procedure outlined in the MOU culminates in an arbitration to be held before a third party arbitrator, with the parties splitting the cost. Although the MOU says nothing specific about the arbitration of claims involving violations of statutory rights, it does include the general statement that "[t]he decision of the arbitrator shall be final and binding on all parties."

The arbitration proceeding was not recorded, and the arbitrator issued a ruling denying Marcario's grievance in November of 2003. Neither party petitioned the court to vacate or correct the arbitrator's decision.

Marcario filed her complaint against the County in June of 2004, alleging causes of action for workplace retaliation in violation of Labor Code section 1102.5, intentional infliction of emotional distress, and violation of civil rights under 42 United States Code section 1983.

After Marcario filed her first amended complaint, the County moved for judgment on the pleadings, arguing (1) the adverse result of the prior arbitration proceeding precluded Marcario's effort to litigate her Labor Code claim in this case; and (2) Marcario's remaining causes of action, for intentional infliction of emotional distress, and civil rights violation, were barred by the applicable statute of limitations.

The court agreed with the County, and granted the motion for judgment on the pleadings. The court subsequently issued a judgment reflecting its conclusions: "The first cause of action is barred by the doctrine(s) of res judicata and/or collateral estoppel in that the issue of workplace retaliation was previously the subject of a final and binding arbitration' award prepared by arbitrator Judy A. Gust on or about November 22, 2003. . . . [¶] That the second cause of action is barred by Code of Civil Procedure § 335.1. [¶] That the third cause of action based upon 42 U.S.C. Section 1983 is also barred by the provisions of Code of Civil Procedure § 335.1."

I

Before we address whether the arbitration conducted in connection with Marcario's MOU grievance affected her right to assert the statutory claims herein, we must make clear that our analysis concerns only that arbitration, and not what the County describes as a separate binding arbitration afforded to Marcario in connection with the settlement of her federal qui tam action. According to the County, that arbitration was the mechanism used for resolving the "ancillary claims" described by Marcario in her first amended complaint. The County asserts those ancillary claims included Marcario's assertion that she had been retaliated against in connection with her employment, and that the claim had been rejected by the arbitrator. Thus, the County insists Marcario has unsuccessfully pressed her claim of workplace retaliation in two *different* binding arbitrations.

There are two problems with this claim. First, the purported arbitration was not included within the allegations of Marcario's first amended complaint, and the stipulation of facts provided to the court in conjunction with the County's motion for judgment on the pleadings makes no reference to it. Although the trial court granted the County's request to take judicial notice of the order confirming the award (which included a copy of the award), the document is not included in our record, and the County has made no request that we take judicial notice of it. Consequently, we have no way of considering it.

Second, and more significant in the long run, what our record does reflect is that the trial court was unpersuaded by the County's suggestion the outcome of the "ancillary" arbitration was significant in this case. The court noted that to the extent the arbitrator in that case considered any claim of workplace retaliation against Marcario, such a claim would apparently have been confined to the period of time which ended 45 days after the date on which the parties had entered into the federal settlement agreement—the time

limitation for asserting the ancillary claims. As such, it could not have encompassed the events at issue here—Marcario's reassignment and ultimate demotion from a Secretary I to an IPT classification.[3] We will consequently disregard the alleged separate arbitration.

## II

That brings us to what *is* before us. Marcario argues the court erred in concluding the MOU grievance arbitration precluded her first cause of action alleging violation of the Labor Code. Although Marcario concedes the arbitrator's decision was adverse to her—it concluded there was insufficient evidence her reassignment and reclassification was retaliatory—she asserts such a decision cannot have preclusive effect *as against a claim for statutory violation* unless the MOU expressly provides that it does.

■ Marcario relies upon several cases, including *Taylor v. Lockheed Martin Corp.* (2003) 113 Cal.App.4th 380 [6 Cal.Rptr.3d 358], and *Camargo v. California Portland Cement Co.* (2001) 86 Cal.App.4th 995 [103 Cal.Rptr.2d 841]. In *Taylor*, the court looked to a line of United States Supreme Court cases which "held that findings made during a labor arbitration are not binding in an employee lawsuit asserting federal statutory causes of action designed to protect workers: a discrimination claim under title VII of the Civil Rights Act in *Alexander v. Gardner-Denver Co.* (1974) 415 U.S. 36, 44–56 [39 L.Ed.2d 147, 94 S.Ct. 1011] (*Alexander*), a minimum wage violation under the Fair Labor Standards Act in *Barrentine v. Arkansas-Best Freight System, Inc.* (1981) 450 U.S. 728, 738–741 [67 L.Ed.2d 641, 101 S.Ct. 1437] (*Barrentine*), and a civil rights claim under 42 U.S.C. section 1983 in *McDonald v. West Branch* (1984) 466 U.S. 284, 289–291 [80 L.Ed.2d 302, 104 S.Ct. 1799] (*McDonald*). [¶] In these three cases, the court gave several reasons for limiting the preclusive effect of a labor arbitration under a CBA [collective bargaining agreement]. It noted that Congress had given the federal courts plenary power over each of the statutory claims at issue and there was no indication in any of the statutes that a prior arbitration divested the courts of the jurisdiction to hear the claim. . . . It characterized a union arbitrator's expertise as 'the law of the shop, not the law of the land' and explained that because the arbitrator's power derives solely from the CBA, he or she has the duty to follow the CBA rather than federal law in case of a conflict between the two . . . . The court also observed that the union's

---

[3] The County did argue in the trial court that, despite the time limitation for *asserting* claims, the arbitrator in the ancillary proceeding actually did consider subsequent events relating to Marcario's claim of workplace retaliation, and thus her decision should be construed as encompassing those later events. The trial court rejected the argument, noting that its record was simply inadequate to establish the truth of the assertion.

interests will not always be aligned with the individual employee's. . . . [¶] In *Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70 [142 L.Ed.2d 361, 119 S.Ct. 391] [*(Wright)*], the Supreme Court reaffirmed the *Alexander-Barrentine-McDonald* line of cases while acknowledging there was 'some tension' between the rule denying preclusive effect to labor arbitrations and language in a more recent decision that upheld an individual employee's agreement to arbitrate a statutory employment discrimination claim. *(Wright,* at p. 76, citing *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20 [114 L.Ed.2d 26, 111 S.Ct. 1647].) Although the court did not decide whether a union can ever waive the statutory employment discrimination claims of its members through a CBA provision, it held that a mandatory arbitration provision in a CBA cannot be enforceable when there is no ' "clear and unmistakable" ' waiver of the right to file suit. *(Wright,* at p. 80 . . . .)" *(Taylor v. Lockheed Martin Corp., supra,* 113 Cal.App.4th at pp. 385–386, citations omitted.) While the *Taylor* court noted that those federal cases were not binding in California, it nonetheless considered them "persuasive" authority for the proposition that a collective bargaining agreement—negotiated between a union and an employer—also could not be used as a means to impliedly dispense with important statutory rights afforded to individual workers under California law. *(Id.* at p. 386.)

In *Camargo v. California Portland Cement Co., supra,* 86 Cal.App.4th 995, the court likewise rejected the assertion that the "binding" arbitration conducted pursuant to a collective bargaining agreement in that case should have preclusive effect in a later superior court action alleging violations of state statutes. Following an extensive analysis of both federal and state authorities, the *Camargo* court explained its reasoning: "if [an arbitration award of a FEHA (California Fair Employment and Housing Act; Gov. Code, § 12900 et seq.) claim under a CBA can ever be given collateral estoppel effect] at least two conditions must be satisfied, and neither is satisfied on the record presented in this appeal. [¶] First, we believe that if the FEHA claims of a union member are to be finally resolved by arbitration (with the concomitant loss of a jury of one's peers), the agreement to do so in a CBA must be 'clear and unmistakable.' *(Wright, supra,* 525 U.S. at p. 80 . . . ; *Vasquez v. Superior Court* [(2000)] 80 Cal.App.4th [430,] 434–436 [95 Cal.Rptr.2d 294].) That is not the case here. The arbitration clause of the CBA in our case does not provide for the arbitration of statutory FEHA claims. Rather, the CBA provides for arbitration of 'any dispute, difference, or grievance . . . *as* [sic] the meaning and application of and compliance with the provisions of this Agreement' (italics added), and its antidiscrimination clause does not explicitly incorporate statutory requirements. . . . [¶] Second, the procedures of the arbitration must allow for the full litigation and fair

adjudication of the FEHA claim. The present record, which arises on demurrer, sheds little light on the fairness of the procedures of the subject arbitration, on the extent of discovery that was allowed the parties, or on whether the arbitrator had any special competence in the adjudication of FEHA claims. These matters are all relevant to a determination whether the arbitration award should be given collateral estoppel effect. ([*Alexander*], *supra*, 415 U.S. at p. 60, fn. 21 . . . ; *Vandenberg*[ (1999)] 21 Cal.4th [815,] 829 [88 Cal.Rptr.2d 366, 982 P.2d 229].) [¶] We therefore conclude that, on the record presented, the rule of the United States Supreme Court in [*Alexander*], *supra*, 415 U.S. 36 . . . should control and defendants have not shown that the arbitration award is entitled to collateral estoppel effect." (*Camargo v. California Portland Cement Co., supra*, 86 Cal.App.4th 995, 1018–1019, fn. omitted.)

Several other California cases have applied the same rule in concluding an employee could not be compelled even to participate in an arbitration proceeding mandated by a collective bargaining agreement, if the claims at issue are based upon state statutes. (*Vasquez v. Superior Court, supra*, 80 Cal.App.4th 430; *Torrez v. Consolidated Freightways Corp.* (1997) 58 Cal.App.4th 1247 [68 Cal.Rptr.2d 792]; *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33 [90 Cal.Rptr.2d 15].) In *Vasquez*, a writ proceeding, the appellate court ordered the trial court to vacate its order compelling arbitration of an employee's claims. The court concluded that even assuming a union had the power to waive its member's rights to pursue statutory claims in court—and the court expressly declined to decide that issue—such a waiver could be effected only by the most "explicit" language, without any resort to inference. The provision in that case, stating only that all grievances must be pursued in accordance with the terms of the collective bargaining agreement, and would terminate in mandatory, binding arbitration, was not sufficiently explicit. As the court explained: "Neither disability discrimination, the FEHA, nor the ADA is mentioned in the CBA. Thus, we cannot conclude that the union clearly and unmistakably waived Vasquez's right to a judicial forum for his statutory disability discrimination claim. . . . [¶] The national origin discrimination claim is also not arbitrable. The CBA includes language which states that the parties make a contractual commitment not to discriminate against any employee on account of national origin 'under applicable federal and state law' . . . [but] these statutes are not even mentioned. There is of course the general language making all contractual disputes subject to the grievance and arbitration procedure. *Wright*, however, emphasized that with respect to statutory discrimination claims, there is no presumption of arbitrability and the waiver of a judicial forum must be clear and unmistakable." (*Vasquez v. Superior Court, supra*, 80 Cal.App.4th 430, 436, citation omitted.)

To counter these authorities, the County relies upon *Risam v. County of Los Angeles* (2002) 99 Cal.App.4th 412 [121 Cal.Rptr.2d 267], and *Williams v. Housing Authority of Los Angeles* (2004) 121 Cal.App.4th 708 [17 Cal.Rptr.3d 374]. According to the County, these cases establish that the findings of an administrative agency, following its internal grievance procedure, are entitled to be given binding effect. However, both *Williams* and *Risam* are distinguishable, because neither involved a collective bargaining agreement or an arbitration. Instead, each of those plaintiffs was afforded an administrative proceeding unilaterally created by the governmental entity and which culminated in a hearing before a civil service commission.

Such proceedings, when properly established, result in personnel decisions which are, in effect, made by the government agency itself, acting in a quasi-judicial capacity. Indeed, Los Angeles County's civil service rules, adopted by the county's board of supervisors pursuant to the California Constitution and the County's charter, "have the force and effect of law," and give the County the " 'exclusive right to . . . hire or rehire, . . . and to determine the methods, means and personnel by which the county's operations are to be conducted.' " (*DeCuir v. County of Los Angeles* (1998) 64 Cal.App.4th 75, 80 [75 Cal.Rptr.2d 102], boldface & italics omitted.)

As explained by the United States Supreme Court in *Astoria Federal S. & L. Assn. v. Solimino* (1991) 501 U.S. 104, 107 [115 L.Ed.2d 96, 111 S.Ct. 2166], the courts have traditionally deferred to the right of government agencies to resolve their own internal disputes: " 'When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* . . . .' " (Quoting *United States v. Utah Constr. Co.* (1966) 384 U.S. 394, 422 [16 L.Ed.2d 642, 86 S.Ct. 1545, 176 Ct.Cl. 1391].)

In this case, however, the County itself did not resolve Marcario's grievance through an internal administrative process. Instead, in accordance with the MOU, the matter was ultimately referred to an outside arbitrator for the "binding" decision. As a consequence, Marcario had no right to challenge the decision by writ of mandate, as she would have been entitled to do had she been afforded the administrative process outlined in *Williams* or *Risam*. (See Code Civ. Proc., § 1094.5.)[4] In fact, it was only because the plaintiff in

---

[4] The right to have an administrative decision reviewed by the court in a writ proceeding is substantial. In such proceedings, the court is empowered to both review the evidence— determining in some cases whether substantial evidence supports the agency's factual findings, and in others conducting an independent evaluation of the weight of the evidence—and independently review the merits of any legal contentions. (Code Civ. Proc., § 1094.5; *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 531, 555 [27 Cal.Rptr.3d 171];

*Risam* did not timely avail herself of that remedy, and opted instead to proceed directly with a claim for damages, that the administrative decision rendered against her was treated as final and binding. *Risam* and *Williams* are thus inapposite.

Because the MOU between Marcario's union and the County made no reference to statutory claims, and its grievance procedure was seemingly limited to ascertaining whether the County had violated the terms of the MOU,[5] we cannot conclude it operated as a waiver of Marcario's rights to pursue her statutory claims in court.[6] Consequently, the arbitration conducted at the conclusion of her grievance process cannot be given preclusive effect against her claim for violation of the Labor Code. The trial court erred in ruling otherwise.

## III

Marcario also contends the court erred in concluding that her remaining causes of action, for intentional infliction of emotional distress, and civil rights violation, were barred by the two-year statute of limitations contained in Code of Civil Procedure section 335.1. Her argument is twofold. As to both causes of action, she argues the statute of limitations was equitably tolled during the pendency of her MOU grievance process. And as to the cause of action for civil rights violation, she argues even if equitable tolling did not apply, the proper limitations period is three years, not two.

---

*Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107–108 [73 Cal.Rptr.2d 523].) By contrast, in the case of a binding arbitration, the courts have no ability to review either the sufficiency of the evidence or the propriety of the arbitrator's legal rulings. (Code Civ. Proc., § 1286.2.) In fact, in the absence of a specific agreement requiring them to do so, arbitrators need not follow the law in rendering their decisions. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10, 11 [10 Cal.Rptr.2d 183, 832 P.2d 899] [" '[a]rbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action' "].)

[5] "[A] grievance may be filed if a management interpretation of application of the provisions of this [MOU] adversely affects an employee's wages, hours or conditions of employment."

[6] At oral argument, the County also seemed to be asserting that cases such as *Garcia v. Rockwell Internat. Corp.* (1986) 187 Cal.App.3d 1556 [232 Cal.Rptr. 490], establish that Marcario's cause of action for violation of the Labor Code would not qualify for the "statutory claim" exemption from the binding effect of an MOU arbitration, because the specific statute she relies upon merely codified a preexisting *common law* claim. However, the County made no such argument in its brief; instead, it cited *Garcia* and the other cases only in support of its argument as to the proper *statute of limitations* to be applied to the claim. We cannot consider arguments raised for the first time at oral argument. In any event, we probably would not find the argument persuasive, because the cases discussed do not address the binding effect of a grievance arbitration on such a claim.

■ "Equitable tolling is a fact intensive issue and it is determined based upon evidence. Accordingly, we are compelled to affirm the trial court's rejection of the theory if there is substantial evidence to support its determination." (*Thomas v. Gilliland* (2002) 95 Cal.App.4th 427, 434 [115 Cal.Rptr.2d 520].) In this case, the only "facts" we have are those contained in the first amended complaint and the parties' stipulation before the court. Consequently, we must determine whether those facts were sufficient to support the trial court's rejection of equitable tolling in this case.

In support of her tolling argument, Marcario relies upon *Addison v. State of California* (1978) 21 Cal.3d 313 [146 Cal.Rptr. 224, 578 P.2d 941], *Elkins v. Derby* (1974) 12 Cal.3d 410, 414 [115 Cal.Rptr. 641, 525 P.2d 81], and *Acuña v. Regents of University of California* (1997) 56 Cal.App.4th 639, 647 [65 Cal.Rptr.2d 388]. *Elkins* is most factually similar to this case.

In *Elkins*, the plaintiff suffered an injury while working on the defendant's premises. Believing himself to be the defendant's employee, the plaintiff filed a claim for workers' compensation. However, several months later, after the one-year personal injury statute of limitations had expired, the Workers' Compensation Appeals Board determined that he had not been an employee at the time of his injury, and dismissed his claim. The plaintiff immediately filed an action for personal injuries, only to have the trial court dismiss it as untimely. The Supreme Court reversed the trial court's decision, explaining that even though the plaintiff could have pursued both a workers' compensation remedy and a civil remedy at the same time, he was not obligated to do so.

"Although defendants point out that plaintiff could have preserved his rights despite the statute of limitations by simultaneously commencing a civil action and a compensation claim, we believe that the statute may properly be tolled for the period during which plaintiff pursued his compensation remedy. As we explain below, an awkward duplication of procedures is not necessary to serve the fundamental purpose of the limitations statute, which is to insure timely notice to an adverse party so that he can assemble a defense when the facts are still fresh. The filing of a compensation claim accomplishes this purpose and the tolling of the statute does not frustrate it. Moreover, nothing in the cases forecloses a rule that the statute is tolled during the pendency of compensation proceedings; indeed, the pertinent authorities support such a rule. [¶] Defendants' suggested duplicative procedures would impose a heavy burden on all concerned. Such procedures would entail the filing of cases in our heavily burdened superior courts that would be mooted whenever the board decided it had jurisdiction to grant relief." (*Elkins v. Derby, supra,* 12 Cal.3d at p. 412.) The court went on to note that "if the defendant is not

prejudiced thereby, the running of the limitations period is tolled '[when] an injured person has several legal remedies and, reasonably and in good faith, pursues one.' " (*Id.* at p. 414, quoting *Myers v. County of Orange* (1970) 6 Cal.App.3d 626, 634 [86 Cal.Rptr. 198].)

As in *Elkins*, there is no suggestion here that Marcario was not acting in good faith during her pursuit of the grievance procedure. Further, that grievance proceeding would have certainly "insure[d] timely notice to [the County]" regarding her claim, and allowed it to "assemble a defense when the facts are still fresh." (*Elkins v. Derby, supra*, 12 Cal.3d at p. 412.)

The County's argument against equitable tolling relies heavily on the purported arbitration of "ancillary" claims conducted in the wake of Marcario's qui tam action. However, as we have already explained, that arbitration is not reflected in the record before us and plays no part in our analysis. And apart from that, the County simply suggests that Marcario could have filed this lawsuit during the pendency of her grievance proceeding, and thus should not be entitled to any tolling. But that is simply contrary to what *Elkins* holds. The fact that Marcario *could have* pursued her civil claim earlier simply puts her in the same position as the plaintiff in *Elkins*. And we conclude, as the Supreme Court did, that "could have" is not the same thing as "was obligated to."

Significantly, what is missing from the County's argument—and our record—is any suggestion it would be prejudiced by the application of equitable tolling in this case; nor is there any basis to infer that "the fundamental purpose of the limitations statute, which is to insure timely notice to an adverse party so that he can assemble a defense when the facts are still fresh" (*Elkins v. Derby, supra*, 12 Cal.3d at p. 412), would be undermined. We consequently conclude the trial court erred in refusing to apply equitable tolling in this case.

As reflected in Marcario's first amended complaint, her position was reclassified and her rate of pay adversely affected thereby in June of 2001. She initiated her grievance proceeding only one month later, in July of 2001. According to the parties' stipulation, that grievance proceeding culminated in the arbitrator's decision which was issued in November of 2003. Marcario then filed her superior court complaint in June of 2004. Thus, if we exclude the time the grievance proceeding was pending, Marcario filed her lawsuit within one year of the date upon which she suffered the adverse job action. Her claims were thus timely.

The judgment is reversed, and the case is remanded for further proceedings. Marcario is to recover her costs on appeal.

Moore, J., and Aronson, J., concurred.