[No. G038103. Fourth Dist., Div. Three. Jan. 28, 2008.]

MASTANEH AHMADI-KASHANI, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,
Defendants and Respondents.

## COUNSEL

Grobaty & Pitet, Michael J. Grobaty, Christopher L. Pitet and Sommer A. Salam for Plaintiff and Appellant.

Littler Mendelson, John S. Adler and Lara K. Strauss for Defendant and Respondent the Regents of the University of California.

Garrard & Davis and Steven D. Davis for Defendant and Respondent Mani Vannan, M.D.

## OPINION

**BEDSWORTH, J.**—Mastaneh Ahmadi-Kashani appeals from a judgment entered against her after the court granted a motion for summary judgment. Ahmadi-Kashani sued her employer, the Regents of the University of

California, and her supervisor, Mani Vannan, M.D. (collectively the Regents), alleging sexual harassment in violation of the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). The court granted the summary judgment after concluding Ahmadi-Kashani's lawsuit was barred because she initiated, but did not complete, an internal grievance process set forth in a collective bargaining agreement entered into between the university and her union. The court reasoned that although Ahmadi-Kashani would have been entitled to bypass the internal process entirely, and proceed directly with her FEHA claim, she was required to complete the internal process once she had initiated it.

We reverse. While the grievance process offered to Ahmadi-Kashani allowed her an opportunity for informal resolution of her grievances, it did not provide for a "quasi-judicial" hearing with sufficient due process to generate a legally binding result. The only evidentiary hearing even mentioned in the grievance process was a "Step 4 binding arbitration," and the right to invoke that hearing belonged exclusively to the union— Ahmadi-Kashani herself was given no right to compel any arbitration of her claims.

Because Ahmadi-Kashani had no right to an evidentiary hearing as part of her grievance process—and certainly never participated in one—the authorities relied upon by the trial court in concluding she was bound to complete that process, and then to challenge its result through a writ of mandate proceeding, are inapposite. We can discern no reason to declare that she should be bound by the university's rejection of her claims merely because she chose to participate in an informal "meeting" convened to "discuss" them (the second step of the grievance process).

Moreover, even assuming Ahmadi-Kashani herself had been given some right to initiate the Step 4 binding arbitration, and had completed that arbitration, its result would not, in fact, have been entitled to binding effect against her in a subsequent lawsuit based upon the FEHA. (*Marcario v. County of Orange* (2007) 155 Cal.App.4th 397 [65 Cal.Rptr.3d 903].) We perceive no basis for according binding effect to a partially completed grievance process, when even the completed process would not have been entitled to such effect.

The judgment is reversed, and the case remanded for further proceedings.

## FACTS

Although there appear to be no disputed factual issues material to our resolution of this appeal, we are nonetheless required to view the evidence in the manner most favorable to Ahmadi-Kashani—the party opposing the

summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) That evidence reveals the following: From April of 1997 through February of 2004, Ahmadi-Kashani was employed as a research assistant in the cardiology department of the University of California, Irvine, School of Medicine. Defendant Vannan assumed the role of associate chief of the cardiology department in late 2003, and almost immediately began subjecting Ahmadi-Kashani to sexual harassment.[1]

Ahmadi-Kashani reported the harassment to another doctor in the department, who told her there was nothing he could do about it. At his suggestion, she reported the problem to the department's office manager, who suggested that if Vannan's conduct was a real problem for her, she should look into finding another position.

In December of 2003, she reported the problem to the dean of the school of medicine. He told her he did not wish to get involved, and suggested she go through the "proper channels" with human resources. Shortly thereafter, Ahmadi-Kashani was informed she was being "laid off due to cessation in funding."

Ahmadi-Kashani filed eight grievances pursuant to the terms of the collective bargaining agreement between the university and the University Professional and Technical Employees CWA, Local 9119. Her grievances asserted not only that she had been sexually harassed and improperly laid off, but also that she had been inadequately compensated for overtime work, and for "out of class assignment." She also claimed the university had improperly failed to review her reclassification request, and failed to provide her with a copy of her personnel file when she requested it.

The grievance process set forth in the collective bargaining agreement consists of a maximum of four "steps." Step 1 of the process is the delivery

---

[1] The Regents argue we should not consider the portions of Ahmadi-Kashani's declaration describing the allegedly harassing statements made to her by Vannan, because the trial court sustained objections to those statements and Ahmadi-Kashani has not specifically challenged that decision on appeal. But the insufficiency of the evidence demonstrating harassment is the basis for neither the trial court's summary judgment, nor the Regents' arguments herein. Consequently, we do not view Ahmadi-Kashani's failure to separately challenge the propriety of those objections as a waiver of any error. Further, it was error for the court to exclude Ahmadi-Kashani's recitation of what Vannan allegedly said to her, based upon either the hearsay rule or the "speculative" nature of Ahmadi-Kashani's interpretation of his comments. The hearsay rule applies only to statements "offered to prove the truth of the matter stated" (Evid. Code, § 1200), and the statements attributed by Ahmadi-Kashani to Vannan, such as a comment about the beauty of her hair, or a request that she accompany him for a drive in his car, or to his hotel, were not offered to establish the truth of what he allegedly said. As for whether Ahmadi-Kashani's interpretation of the intent behind his statements was reasonable, that is an issue for the jury.

of a formal written grievance to the labor relations office at the campus where the employee works. The university has 15 calendar days from receipt of the grievance to respond. If the university does not timely respond, or the employee is dissatisfied with the response, the employee may proceed to step 2, by filing a written "appeal" within 15 calendar days of when the response was issued or was due.

The step 2 "appeal" is a meeting convened by the "designated University local official" with the employee and her representative, "no later than 15 calendar days following receipt of the appeal to Step 2." The purpose of that meeting is to "discuss information and contentions relative to the grievance" and to "attempt to resolve" it. Within 15 calendar days after the step 2 meeting, the university is required to issue a written "decision" regarding the grievance.[2]

Step 3 of the process is an appeal filed "with the Director of Labor Relations in the Office of the President." Step 3 does not provide for any meeting or other mutual exchange of information. The university has 30 days from the receipt of the step 3 appeal to issue its "written answer."

The fourth, and final, step of the grievance process is a "binding arbitration." However, the employee has no right to initiate a step 4 arbitration. Only the union itself has that right.

Ahmadi-Kashani's grievances were rejected by the university in step 1, and she timely filed a step 2 appeal on June 14, 2004. However, the step 2 "meeting" was not convened within 15 calendar days, as required. Instead, eight months passed, with no meeting. On February 15, 2005, Ahmadi-Kashani consulted with counsel, and filed a claim with the Department of Fair Employment and Housing. Two days later, on February 17, 2005, the department issued a right-to-sue letter to both Ahmadi-Kashani and the university.

The very next day, the university sent Ahmadi-Kashani a letter scheduling her step 2 meeting for February 23, 2005—only five days later. The letter reflected that the "Hearing Officer" for the meeting would be "Michelle Quint, Labor Relations Specialist." Ahmadi-Kashani attended that meeting, accompanied by her counsel. However, neither she, nor anyone else was placed under oath; no documents were permitted to be introduced; no third party "witnesses" were allowed to be present; and her counsel was not

---

[2] The agreement also specifies that in cases of sexual harassment, the grievance process ends at step 2. However, such a grievance can be pursued beyond step 2 "when made in connection with a provision of another Article that is grievable beyond Step 2."

allowed to question Vannan, who was also present but did not speak. Transcription of the meeting was not provided.

As anticipated in the collective bargaining agreement, the step 2 meeting did result in a "decision," issued on March 10, 2005. That decision was not issued by Quint, the meeting's "Hearing Officer," but instead by David L. Tomcheck, associate vice chancellor.[3]

He rejected Ahmadi-Kashani's harassment claim on the basis that she had made no complaint to the "Office of Equal Opportunity and Diversity" and thus there had been no "formal investigation" of her harassment complaint. His quite remarkable explanation of the flaw in Ahmadi-Kashani's case was that, "In the absence of a formal investigation, I can only base my decision on the evidence presented at the hearing. Since all that was submitted at the hearing was the grievant's verbal account of events, I cannot say that the grievant has presented a *prima facie* case that she was subjected to sexual harassment. . . ." It is difficult to imagine a more palpable and fundamental failure to understand the term "prima facie case."

Ahmadi-Kashani did not appeal to step 3 of the grievance process. Instead, on January 31, 2006, she filed her complaint in superior court alleging causes of action for sexual harassment and wrongful termination. On September 1, 2006, the Regents filed their motion for summary judgment, arguing the

---

[3] Ahmadi-Kashani claims in her brief that Tomcheck was not even present at the meeting. The record is silent on that point, but the Regents do not dispute the contention, asserting instead that "an administrative decision rendered by a person not present at a hearing based on a hearing officer's efforts does not violate the requirements of due process." The case cited by the Regents in support of that assertion, however, *Bockover v. Perko* (1994) 28 Cal.App.4th 479 [34 Cal.Rptr.2d 423], is inapposite. In *Bockover*, the court considered an administrative process which included a requirement that the hearing be "recorded" and gave the employee the additional right to arrange for a stenographer. Moreover, the hearing "body" was expressly required to submit a detailed explanation of its recommended findings to the ultimate decision maker, with each finding of fact supported by the evidence. The *Bockover* court likened that process to another case holding that " 'participation in a decision by a board member *who has read and considered the evidence*, or a transcript thereof, even though he was not physically present when the evidence was produced, does not violate the requirements of due process . . .' ([*Cooper v. State Bd. of Medical Examiners* (1950) 35 Cal.2d 242], 246 [217 P.2d 630] . . .)" (*Bockover v. Perko, supra*, 28 Cal.App.4th at p. 488, italics added), and one concluding it was proper to "permit[] an administrative agency, without reading the record, to adopt the proposed decision of 'a fair and impartial hearing officer *who is required by the statute to weigh and appraise the evidence and to prepare a proposed decision . . . .' (Hohreiter* v. *Garrison* (1947) 81 Cal.App.2d 384, 401 [184 P.2d 323].)" (*Bockover v. Perko, supra*, 28 Cal.App.4th at p. 488, italics added.) The step 2 meeting and Tomcheck's decision in this case bear little resemblance to the process required in any of those cases.

complaint was barred because of Ahmadi-Kashani's failure to exhaust her administrative remedy and her failure to exhaust her judicial remedies.[4]

Over the opposition of Ahmadi-Kashani, the court granted the summary judgment. Relying upon *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074 [6 Cal.Rptr.3d 457, 79 P.3d 569], and *Page v. Los Angeles County Probation Dept.* (2004) 123 Cal.App.4th 1135 [20 Cal.Rptr.3d 598], the court concluded that although "a public employee such as [Ahmadi-Kashani] may elect to pursue an employment discrimination, harassment or retaliation claim either through an internal grievance procedure or under the provisions of the Fair Employment and Housing Act . . . if the employee chooses to invoke an internal grievance procedure, the employee must see that procedure through to a conclusion and then exhaust any available judicial review of that procedure before seeking relief through the FEHA and/or the courts."

The court went on to explain that although Ahmadi-Kashani would have had no right to proceed beyond the step 2 meeting based upon her harassment claim alone, the fact it was combined with other claims entitled her to proceed to step 3 of the grievance process. He felt her failure to do so amounted to a failure to exhaust that administrative remedy.

I

The Regents cite *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311 [25 Cal.Rptr.3d 320, 106 P.3d 976], in support of the proposition that " '[e]xhaustion of administrative remedies is a jurisdictional prerequisite to resort to the courts.' " However, as the Regents concede, because Ahmadi-Kashani's harassment claim is governed by the FEHA, she was not obligated to exhaust any available "administrative remedy," and could have proceeded directly with a claim to the Department of Fair Employment and Housing, and then to the courts. (*Schifando v. City of Los Angeles, supra,* 31 Cal.4th 1074.)

Nonetheless, the Regents successfully argued below that once Ahmadi-Kashani had initiated the internal grievance process outlined in her union agreement, she was required either to participate in that process until its conclusion or be bound by any adverse result. They are wrong.

The Regents rely upon *Page v. Los Angeles County Probation Dept., supra,* 123 Cal.App.4th 1135, in support of their contention Ahmadi-Kashani could not abandon the grievance process once she had initiated it. However, in

---

[4] The Regents' motion also included other arguments, but they are not reasserted on appeal, and we consequently do not consider them.

*Page*, the plaintiff's administrative remedy was governed by the Los Angeles County Civil Service Rules, and she was entitled to a full adversarial hearing before a civil service commission hearing officer. She participated in that hearing, and then waited until *after* she had learned of the hearing officer's adverse decision, before filing her FEHA claim. Analogizing from those facts to these requires an investment of considerably more imagination than stare decisis allows.

As the *Page* court explained, it was the fact the plaintiff had waited until after the hearing, and the issuance of the hearing officer's "comprehensive" decision, which prevented her from simply walking away. That hearing had constituted a sufficient quasi-judicial process to trigger res judicata and collateral estoppel effect, and consequently its result could not simply be ignored: "Page chose the civil service commission process and proceeded through three days of hearing over the course of four months, resulting in a comprehensive decision by the hearing officer. Page was not then free to ignore and abandon the administrative process and proceed to a FEHA action for damages. Page had to await a final Commission decision and, if it was adverse, then file a petition for writ of mandate in the trial court to overturn the Commission decision. Only if she had done so and prevailed in the writ proceedings, thus vacating the Commission decision, could she have then filed a lawsuit, *since the Commission's decision has issue and claim preclusive effect.*" (*Page v. Los Angeles County Probation Dept., supra*, 123 Cal.App.4th at p. 1142, italics added.) That is a time zone or two from our facts.

█ The significance of a claimant's participation in a full-blown "quasi-judicial" hearing before walking away from an administrative proceeding was also highlighted in *Schifando v. City of Los Angeles, supra*, 31 Cal.4th 1074, the case in which the Supreme Court concluded that a FEHA plaintiff such as Ahmadi-Kashani was not obligated to exhaust an administrative remedy. The *Schifando* court explained that its reasoning was not inconsistent with its prior opinion in *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61 [99 Cal.Rptr.2d 316, 5 P.3d 874], in which it held a FEHA plaintiff was required to overturn the adverse result of an administrative proceeding through a writ of mandate prior to proceeding on a claim for damages in court. "*Johnson* held that when employees have availed themselves of the administrative remedies a local statute affords, and have received an adverse *quasi-judicial* finding, that finding is binding on subsequent discrimination claims under the FEHA unless set aside through a timely mandamus petition. . . . Thus, *Johnson* held only that because the employee had exhausted the remedies the city offered, and had not exhausted his judicial remedies, the city agency's findings were binding on his subsequent FEHA claims. [Citation.] We reasoned that refusing to give binding effect to those *quasi-judicial* findings would 'undermine the efficacy of such proceedings, rendering them in many

cases little more than rehearsals for litigation.' [Citation.]" (*Schifando v. City of Los Angeles, supra*, 31 Cal.4th at p. 1090, italics added.) In other words, both *Page* and *Johnson* are founded on the rationale that a plaintiff is entitled to only one opportunity to try her claim. If she takes that opportunity in the context of an administrative process, she cannot merely ignore an adverse result and ask for a "do-over" in court.

But in this case, by contrast to both *Page* and *Johnson*, Ahmadi-Kashani was afforded no hearing at all, let alone a "quasi-judicial" one, prior to abandoning her grievance process. Nothing in the description of the step 2 "meeting" convened by the "designated University local official" suggests it was intended to afford Ahmadi-Kashani an opportunity to *prove* her case. To the contrary, the meeting is described as merely an opportunity for the parties to "discuss information and contentions relative to the grievance." And for all appearances, even that is an expansive description of what actually happened.

Although Ahmadi-Kashani was entitled to be accompanied by a representative, the meeting included no provisions for sworn testimony and no opportunity for cross-examination, for the questioning of third party witnesses, or for the admission or consideration of other evidence. No record of the meeting was made, and despite the fact that Vannan, the man who allegedly harassed Ahmadi-Kashani, was present at the meeting (he was not required to be) she was not allowed to question him. He remained a silent observer.

Moreover, while a "hearing officer" was present at the step 2 meeting, the record reflects she was *not* the person who issued the university's subsequent "decision." What, if any, communications she might have had with the person or persons who ultimately made that decision is unknown. The step 2 procedures include no provisions requiring her to make any recommendations or communicate any particular details about the meeting to anyone.[5]

And of course, the "decision" ultimately issued by the university following the step 2 meeting does nothing but demonstrate how wholly inadequate this proceeding was for resolving Ahmadi-Kashani's claim of harassment. The conclusion reached was that *because* Ahmadi-Kashani presented only her version of the facts, she could not prevail. In other words, the process allowed for nothing but her verbal description of events and then dismissed the dispute on the basis that a mere verbal description could not suffice to make a case. This is justice à la Lewis Carroll.

Specifically, the decision states that "[s]ince all that was submitted . . . was the grievant's verbal account of events, I cannot say that the grievant has

---

[5] See footnote 3, *ante*.

presented a *prima facie* case . . . ." Of course, in any true "quasi-judicial" evidentiary hearing, Ahmadi-Kashani's testimony about the alleged harassment would have been viewed as establishing her prima facie case, since if believed, it demonstrates the fact of the harassment. Once that evidence was admitted, it would then be incumbent upon Vannan, the alleged wrongdoer, to counter it with evidence that the alleged statements were either not made, or were unreasonably construed by Ahmadi-Kashani. In this case, however, the fact that Vannan was allowed to remain silent throughout the meeting strongly suggests the hearing was not intended as a means for evaluating the truth of Ahmadi-Kashani's contentions. It was merely a "discussion."

Because Ahmadi-Kashani never participated in a quasi-judicial hearing as part of her aborted grievance process, there was no decision rendered that would be entitled to preclusive effect in a subsequent court proceeding. *Page* and *Johnson* are consequently inapplicable, and we can perceive of no other reason why Ahmadi-Kashani should be obligated to *continue* with a grievance process which seems to us wholly unsatisfactory, and in which she was not required to participate in the first place.

On the other hand, we can see the disadvantage of a rule that would automatically obligate an employee to complete every step of a nonmandatory internal grievance process, merely because he or she had started it—a requirement we can only think of as a "clean plate" rule.[6] The disadvantage of that inflexible approach is its tendency to discourage an employee from ever attempting to resolve a complaint internally, prior to initiating a lawsuit. This is especially true where, as here, the employer apparently sees no problem with a "pocket veto" that delays a hearing required to be held in 15 days for *eight months*, a tactic that failed here only *because* the employee went outside the grievance system.

Because an organization's internal grievance process is often an effective way to achieve such a resolution, we are loath to discourage it. But if we interpret it as the Regents suggest, no one intelligent enough to get a job would even enter into the grievance process.

In this case for example, the first three steps of the grievance process agreed to by the university and Ahmadi-Kashani's union appear to be designed primarily as a means of allowing an employee (or the union) to air complaints, and to ensure the university has an early opportunity to understand and address them, if it chooses to. Only step 4 of the grievance process, the binding arbitration, removes a dispute from the university's internal process, and empowers a neutral third party to conduct an adversarial hearing

---

[6] You can take as much as you want; but if you put it on your plate, you have to eat it.

and to impose a binding resolution. Short of that step 4, however, the process is more cooperative than adjudicative.

In cases such as this, where the grievance process is not mandatory, it still makes sense to encourage an employee to utilize those cooperative phases of the internal grievance process, prior to pursuing a lawsuit. And if we endorsed a rule which obligated any employee who initiated even the first step of that process to complete every single step—and to then file a writ of mandate if things did not work out—it would certainly discourage some from trying. We decline to do so.

Finally, the anomaly of a rule which would require Ahmadi-Kashani to pursue her FEHA claim all the way through to the end of the internal grievance process negotiated by her union—merely because she started it—appears particularly acute when we recognize that even if she had done so, and even if that process had actually afforded her a right to compel the step 4 "binding arbitration"—the only significant opportunity to *prove her case* that we can discern in the entire process—she would have been free nonetheless to ignore its result and pursue her claim in court.

█ As we recently explained in *Marcario v. County of Orange, supra,* 155 Cal.App.4th 397, 399, the arbitration of a labor grievance, conducted pursuant to the terms of a collective bargaining agreement entered into between a union and an employer, cannot be given binding effect as against the employee's claims for violation of statute, unless (1) the agreement states explicitly that it is intended to apply to such claims; and (2) it provides a fair procedure for doing so.

In this case, as in *Marcario,* the written grievance procedure does not specify that the Step 4 binding arbitration is intended to bind the employee on claims of statutory violations. To the contrary, with respect to claims for sexual harassment, it essentially seeks to restrict the grievance process to steps 1 and 2, offering the employee no right to arbitration—binding or otherwise—unless the claim is joined with other grievances. Such a truncated process cannot be viewed as sufficient to preclude a plaintiff's right to vindicate her statutory rights in court, especially when the significantly greater rights afforded to a plaintiff such as Marcario are not.

█ In light of the foregoing, we conclude Ahmadi-Kashani's initiation of the internal grievance process in this case, and her participation in that process to the extent of a meeting with a university representative to discuss her claims, did not obligate her to *complete* that process. Because her participation in the grievance process had not included any "quasi-judicial" hearing, she remained free to walk away and pursue her FEHA claim in

court. Consequently, the trial court erred in concluding her FEHA claim was barred by her failure to exhaust that internal remedy.

## II

■ The court also erred in concluding Ahmadi-Kashani failed to exhaust her judicial remedy. As explained in *Johnson v. City of Loma Linda, supra*, 24 Cal.4th 61, 69, the requirement that a litigant exhaust her judicial remedy—meaning a petition for writ of mandate—following her participation in an administrative process is based upon the assumption her administrative process included some right to a quasi-judicial hearing. "[I]n *Westlake Community Hosp. v. Superior Court* [(1976)] 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410] . . . , [we] held that unless a party *to a quasi-judicial proceeding* challenges the agency's adverse findings made in that proceeding, by means of a mandate action in superior court, those findings are binding in later civil actions." (*Johnson v. City of Loma Linda, supra*, 24 Cal.4th 61, 69–70, italics added.)

"The underpinnings of this rule of exhaustion of judicial remedies are buried in the doctrine of res judicata or that portion of it known as collateral estoppel and more recently as issue preclusion. . . . [¶] . . . [¶] Res judicata . . . deals with the preclusive effects of judgments in civil proceedings. . . . In its primary aspect the doctrine operates as a bar to the maintenance of a second suit between the same parties on the same cause of action." (*Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 241–242 [244 Cal.Rptr. 764].) Thus, if a party either participated in a quasi-judicial hearing, or was afforded the opportunity to do so as part of a mandatory administrative process, that process is considered her first "suit," and she is bound by its result. The exhaustion of judicial remedies rule provides she cannot pursue another remedy until she overturns the adverse result of the first suit.

That did not happen in this case. Because Ahmadi-Kashani's harassment claim under the FEHA was exempt from any requirement that she exhaust her administrative remedy, she was free to abandon that internal grievance process at any point short of a quasi-judicial hearing. Because she did so, the grievance process failed to produce any result which was entitled to binding effect in a subsequent judicial proceeding. As a consequence, she remained free to pursue her claim without any requirement she take steps to overturn that result.

The judgment is reversed and the case remanded for further proceedings. Ahmadi-Kashani is entitled to recover her costs on appeal.

Rylaarsdam, Acting P. J., and Aronson, J., concurred.