[No. A061812. First Dist., Div. Three. Aug. 31, 1994.]

MARGARET BOCKOVER, Plaintiff and Appellant, v.
ROBERT PERKO et al., Defendants and Respondents.

## COUNSEL

Daniel Ray Bacon for Plaintiff and Appellant.

Crosby, Heafey, Roach & May, Michael J. Loeb, Paul D. Fogel and Ilene S. Kreitzer for Defendants and Respondents.

## OPINION

**CHIN, J.**—Margaret Bockover appeals from a judgment the trial court entered after sustaining the demurrer of respondents Robert Perko, Frank Robles, Richard Van Slyke, Joseph E. Krueger, and the Regents of the University of California, individually and doing business as Lawrence Livermore National Laboratory (Laboratory). She contends that the trial court erred in dismissing her action for failure to exhaust administrative remedies. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

The Laboratory hired Bockover in December 1986 as a protective service officer, and she began work on December 22 of that year. In its employment offer, the Laboratory informed Bockover that her employment was "contingent upon" her receipt of a " 'Q' clearance" from the United States Department of Energy (DOE). Section K.IV.1 of the Laboratory's personnel policies and procedures manual (Manual) provided that "[c]areer employees who have been denied a Q clearance, or whose Q clearance has been withdrawn, or who have not been granted a Q clearance by the [DOE] within a reasonable amount of time shall be released."

---

[1]We derive the facts from the allegations of Bockover's amended complaint, which we regard as true on this appeal after the sustaining of a demurrer, from the exhibits to the amended complaint, and from documents that the court judicially noticed during the demurrer proceedings. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

By letter dated February 6, 1989, Van Slyke, the manager of the Laboratory's protective force, reminded Bockover of the clearance requirement and noted: "As of this date, you have not received a 'Q' clearance." He further informed Bockover that if she "fail[ed] to receive a 'Q' clearance by June 10, 1989," he would "recommend[] . . . to Staff Relations, that [she] be released" pursuant to section K.IV.1 of the Manual, which the letter quoted and enclosed. By letter dated July 10, 1989, the acting director of the Laboratory's safeguards and security division informed Bockover of the immediate "[s]uspension of [her] DOE 'L' Access Authorization." The letter informed her that the suspension would "remain in effect until the issue of eligibility for continued access authorization in accordance with provisions of 10 CFR, Part 710 ha[d] been resolved."

By memorandum dated January 11, 1990, Perko, the Laboratory's division leader of staff relations, informed Krueger, the head of the Laboratory's safeguards and security department, of Bockover's continued failure to obtain a Q clearance and of Van Slyke's letter to her of February 6, 1989. On January 30, Krueger responded by recommending Bockover's release. By letter dated February 9, Perko informed Bockover that Krueger had recommended her release for failure to obtain a Q clearance "within a 'reasonable period of time' . . . ." "In accord with . . . [the] Manual," the "letter served as 'written notice' of [Bockover's] 'release' from employment with [the Laboratory], effective the date of the memo."

In February 1990, Bockover's attorney met with Robles, a member of staff relations, to discuss settlement. The parties thereafter reached a settlement, which they memorialized in a letter dated March 26, 1990. Under the settlement, the Laboratory agreed to "withdraw the release of employment . . . and place [Bockover] on leave without pay status" pending the DOE's final determination of her Q clearance request. It further agreed to remove her from that status "and return her to paid status as a Protective Service Officer without any loss of seniority because of the leave without pay status" if she obtained the Q clearance. On the other hand, Bockover agreed to resign if the DOE denied her clearance request. The settlement further provided: "The thirty calendar day deadline for filing a grievance in this matter is held in abeyance pending a decision by the [DOE] to go forward with their review."

On March 9, 1990, Bockover had a DOE administrative review hearing. By letter dated September 12, 1991, the DOE granted Bockover a Q clearance. The Laboratory reinstated her on September 16. On October 16, 1991, Bockover "requested payment by [the Laboratory] of the backpay and other

benefits due and owing to her under DOE Order No. 3220.5."[2] By letter dated October 22, 1991, Perko denied Bockover's request.[3]

On September 11, 1992, Bockover filed this action. Respondents demurred to the complaint on the ground that Bockover failed to invoke the Manual's grievance procedure prior to filing suit. The trial court sustained the demurrer with leave to amend "on the ground that [Bockover] failed to exhaust administrative remedies."[4]

Bockover then filed an amended complaint. To remedy the defect in the original complaint, she alleged that she "was not required to exhaust [respondents'] internal grievance process because said process is futile, lacks fundamental fairness, was unavailable to grant [her] an adequate remedy and was unavailable to [her]. Said procedures provide no means by which to subpoena douments [*sic*] or witnesses. The decision reached by the internal Grievance Panel is advisory only and is neither binding nor enforceable. The process was unavailable to [her] during the time she was 'on leave.' The process was also unavailable because it provides a remedy only for actions taken by the [respondents] within the thirty (30) days prior to filing a grievance seeking administrative review. Thus, no adequate administrative remedy was available to [her] by which she could grieve [respondents'] refusal to pay her her backpay for the period prior to September 22, 1991. [She] was, therefore, excused from exhausting [respondents'] administrative and agency remedies."

Respondents again demurred on the ground that Bockover failed to exhaust her administrative remedies. The court sustained the demurrer without leave to amend, and subsequently entered judgment for respondents dismissing the case with prejudice. Bockover then filed this timely appeal.

## DISCUSSION

Determination of this appeal depends on the applicability and adequacy of the Laboratory's grievance procedure. Bockover first contends that

---

[2]In pertinent part, order No. 3220.5 provides: "If following the suspension of the employee's access authorization, the authorization is reinstated by DOE during or at the conclusion of the administrative review process provided under 10 CFR Part 710, the contractor will offer the employee reinstatement in the same or a comparable position to the one held prior to the suspension. The employee will be 'made whole' for any loss of earnings by being reimbursed for the difference between the employee's regular or basic pay and actual earnings, including earnings from other employment during the period of suspension."

[3]Perko's reply letter states that Bockover refused to identify the regulation on which she based her backpay request. However, in reviewing the sustaining of the demurrer, we must assume the truth of the contrary allegation in Bockover's amended complaint. (*Garcia* v. *Superior Court* (1990) 50 Cal.3d 728, 732 [268 Cal.Rptr. 779, 789 P.2d 960].)

[4]It also sustained the demurrer as to certain causes of action on statute of limitations grounds.

the grievance procedure is inadequate because it does "not provide her with the right to subpoena witnesses or documentary evidence and because [it] is advisory only and not binding on the decision maker, [the Laboratory's] Director . . . ." Therefore, she asserts, it "does not square with the requirements of due process . . . ."

■ The general rule of exhaustion "forbids a judicial action when administrative remedies have not been exhausted, even as to constitutional challenges . . . ." (*Roth* v. *City of Los Angeles* (1975) 53 Cal.App.3d 679, 688 [126 Cal.Rptr. 163].) However, ". . . if the remedy provided does not itself square with the requirements of due process the exhaustion doctrine has no application." (*Ibid.*) Due process, though, "does not require any particular form of notice or method of procedure. If the [administrative remedy] provides for reasonable notice and a reasonable opportunity to be heard, that is all that is required. [Citations.]" (*Drummey* v. *State Bd. of Funeral Directors* (1939) 13 Cal.2d 75, 80-81 [87 P.2d 848].)

■ We find that the Laboratory's grievance procedure satisfies the requirements of due process.[5] After setting forth an informal review mechanism, it provides for written submission of grievances to the employee's department head/division leader. The department head/division leader must then issue a written response. The employee may then file a written appeal to the Laboratory director, and elect to have either a "Laboratory Hearing Committee" or a "non-University Hearing Officer" hear the grievance. At least seven days before the hearing, the parties must provide each other "with relevant material and names of all witnesses who are to be introduced at the hearing." At the hearing, "the employee or the employee's representative," who may be an attorney, is entitled "to examine witnesses and to submit relevant evidence." The body hearing the appeal must "[i]dentify . . . the grievance issues submitted in the original, written grievance," and must "determine the facts and whether the management action grieved was in violation of Laboratory personnel policy or implementing procedures or, if the grievance involves corrective action or dismissal, whether the management action was reasonable under the circumstances." The hearing must "be recorded" and the employee "may procure a copy of the record subject to payment of the cost." Furthermore, the employee "may make provisions for a stenographic report of the hearing . . . ."

Within 15 days of the close of the hearing, the hearing body must "[s]ubmit a written hearing report to the Director" detailing its "findings and recommendations." The report must "include a brief description of each

---

[5]During the demurrer proceedings, the trial court properly took judicial notice of that part of the Manual containing the grievance procedure.

incident or management action grieved, each issue under submission, the positions of the parties, the findings of fact and policy violations, if any, and a recommendation for resolution of each issue of the grievance. Findings of fact [must] be supported by the evidence, and recommendations [must] be supported by the findings." The hearing body's decision is "final and binding" when the grievance "alleges violations of corrective action policies, dismissal policies, or layoff policies" and "the employee was in career status at the time the grievance was filed." Otherwise, the recommended decision is advisory, and the Laboratory director must issue a final, written decision within 15 days of receiving the recommendation.

Given this " 'clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties . . . .' " (*Endler* v. *Schutzbank* (1968) 68 Cal.2d 162, 168 [65 Cal.Rptr. 297, 436 P.2d 297]), we reject Bockover's claim that the absence of subpoena power renders the Laboratory's grievance procedure violative of her right to fair procedure. In *Ascherman* v. *San Francisco Medical Society* (1974) 39 Cal.App.3d 623, 648 [114 Cal.Rptr. 681], Division One of this district held that "a private hospital may not deprive a physician of staff privileges without granting him minimal due process of law protection." In explaining what due process requires in this context, the court stated: " '. . . Because a hospital board has no subpoena power, there can be no right to confront and cross-examine persons who have made adverse statements of a doctor unless such persons testify at the hearing. However, a doctor should have the right to call his own witnesses. . . .' " (*Ibid.*) In *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 815-816, footnote 12 [140 Cal.Rptr. 442, 567 P.2d 1162], our Supreme Court expressly endorsed *Ascherman* and quoted approvingly its entire discussion regarding the requirements of due process. And in *Ezekial* v. *Winkley* (1977) 20 Cal.3d 267, 278 [142 Cal.Rptr. 418, 572 P.2d 32], the Supreme Court again cited *Ascherman* approvingly in "recogniz[ing] the practical limitations on the ability of private institutions to provide for the full airing of disputed factual issues. [Citations.]" Thus, the lack of subpoena power does not deprive Bockover of fair process.[6] (See also *McCullough* v. *Terzian* (1970) 2 Cal.3d 647, 656-657 [87 Cal.Rptr. 195, 470 P.2d 4, 47 A.L.R.3d 266] [subpoena power not necessary at pretermination hearing].)

Nor does the alleged "advisory" nature of the hearing body's decision render the grievance procedure inadequate. ■ " 'Due process requires a

---

[6]For decisions from other jurisdictions reaching this conclusion, see *Raju* v. *Rhodes* (5th Cir. 1993) 7 F.3d 1210, 1215; *Old Republic Ins. Co.* v. *Federal Crop Ins. Corp.* (7th Cir. 1991) 947 F.2d 269, 281; *Schultz* v. *Wellman* (6th Cir. 1983) 717 F.2d 301, 307; *Johnson* v. *United States* (D.C. Cir. 1980) 628 F.2d 187, 193-195 [202 App.D.C 187]; *Unglesby* v. *Zimny* (N.D.Cal. 1965) 250 F.Supp. 714, 717-719.

fair trial before an impartial tribunal and that requires that the person or body who decides the case must know the evidence, but due process is not interested in mere technical formalism. It is the substance that is determinative of whether' " an administrative procedure affords due process. (*Cooper v. State Bd. of Medical Examiners* (1950) 35 Cal.2d 242, 245 [217 P.2d 630, 18 A.L.R.2d 593].) Accordingly, ". . . participation in a decision by a board member who has read and considered the evidence, or a transcript thereof, even though he was not physically present when the evidence was produced, does not violate the requirements of due process." (*Id.*, at p. 246.) Moreover, due process permits an administrative agency, without reading the record, to adopt the proposed decision of "a fair and impartial hearing officer who is required by the statute to weigh and appraise the evidence and to prepare a proposed decision . . . ." (*Hohreiter* v. *Garrison* (1947) 81 Cal.App.2d 384, 401 [184 P.2d 323].)

 As we have previously explained, the Manual requires that the hearing body, after hearing the evidence and making certain determinations, submit "to the Director" a written report detailing its findings and recommendations. The report must "include a brief description of each incident or management action grieved, each issue under submission, the positions of the parties, the findings of fact and policy violations, if any, and a recommendation for resolution of each issue of the grievance. Findings of fact [must] be supported by the evidence, and recommendations [must] be supported by the findings." In those cases where the decision is not final and binding, the director's decision based on consideration of this report affords a fair procedure.

*James* v. *Marinship Corp.* (1944) 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900], on which Bockover principally relies, does not require a different conclusion. Although the court in *James* observed that the agency there at issue had no subpoena power, it cited numerous other deficiencies in the administrative procedure. "The parties [were] entitled to no hearings, and hearings [were] held 'only after the members of [the agency] ha[d] agreed upon such action. . . .' " (*Id.*, at p. 744.) Moreover, the agency had "no direct means of enforcing its orders: 'Should [its] directives be defied, such violation [could] be referred to the proper contracting agency. . . . Ultimately noncompliance [was] certified to the President of the United States. The [agency could] also bring such cases of noncompliance to the attention of the Chairman of the War Manpower Commission.' " (*Id.*, at pp. 744-745.) These deficiencies led the court to conclude that the agency was "an advisory body created by an executive order under the wartime powers of the President, and it was not intended that [it] should supplant the ordinary remedies afforded by the courts." (*Id.*, at p. 745.) They lead us to conclude

that *James* is inapposite to this case, which involves a significantly different administrative procedure.[7]

▮ In her amended complaint and in her opening brief, Bockover also contends that the Laboratory's grievance procedure was unavailable to her from February 1990 to September 1991, while she was on leave. However, in her reply brief, she concedes that she "had no reason to file a grievance" during this period because "[t]he '[e]vent . . . which gave rise to the grievance' . . . is [respondents'] denial, on October 22, 1991, of [her] claim for backpay and employment benefits . . . ." "Therefore," she continues, "the fact that administrative remedies . . . existed before October 22, 1991, is of no consequence . . . ." Given this concession, the alleged unavailability of the grievance procedure during the time she was on leave does not excuse her failure to exhaust administrative remedies.

▮ Bockover next contends that the grievance procedure is inadequate because it "limit[s] the time period for which recovery [of backpay and benefits] is possible to thirty days" prior to the grievable event, in this case, the October 22, 1991, denial of her claim. Therefore, the grievance procedure provided no remedy for the period that she was on leave prior to September 22, 1991.

Bockover's argument misconstrues the Manual. Section I.5.1 of the Manual provides: "The grievance must be received by the Manager of Human Resources within thirty calendar days after the date on which the employee could be expected to know of the event or action which gave rise to the grievance, or within thirty calendar days after the date of a separation, whichever occurs first." Bockover alleges that the relevant event occurred on October 22, 1991, when respondents denied her backpay claim. Although section I.5.1 required her to file a grievance within 30 days of that date, nothing in that section limits the period for which she could have obtained recovery to 30 days prior to the denial. Moreover, section I.6.3 expressly authorizes the hearing body to "restor[e] to the employee the pay, benefits, or rights lost as a result of the [grieved] action . . . ." Thus, we find no limitation on Bockover's right to recover for the entire period that she was on leave.

Bockover asserts that the Manual is ambiguous in this regard, and that, at the demurrer stage, we must accept the truth of her allegation regarding the

---

[7]Similarly distinguishable is *Sunnyvale Public Safety Officers Assn.* v. *City of Sunnyvale* (1976) 55 Cal.App.3d 732 [127 Cal.Rptr. 863], which Bockover also cites. There, the administrative procedure did not "provide for the taking of testimony or the submission of legal briefs . . . ." (*Id.*, at p. 736.)

limitation on recovery. However, even if she is correct that the Manual is ambiguous, the rule of exhaustion requires that she first submit the question to the Laboratory through the grievance process. "It lies within the power of the administrative agency . . . to determine, in the first instance and before judicial relief may be obtained, whether a given controversy falls within its granted jurisdiction. [Citations.]" (*Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 982 [88 Cal.Rptr. 533].) Where there is some "question about the applicability of [a] grievance procedure," the employee must "present the question to the [agency] so that [it can] decide the issue in the first instance." (*Ibid.*) Bockover's "preconception of the futility of administrative action [does] not permit [her] to bypass the administrative remedy. [Citation.]" (*Bennett* v. *Borden, Inc.* (1976) 56 Cal.App.3d 706, 710 [128 Cal.Rptr. 627].)

 Finally, Bockover contends that exhaustion was unnecessary because her claim "aris[es] under federal law" and the Laboratory's grievance procedure "does not have jurisdiction to enforce federal law . . . ." She bases this contention on a non-Laboratory hearing officer's report and recommendations (Report and Recommendations) for a grievance involving another Laboratory employee and the Laboratory's posthearing brief in that matter.[8] ▄ ██ ██ She argues that, through these documents, respondents have conceded that "the controversy lies outside" the Laboratory's grievance procedure.[9]

In the grievance proceeding that the Report and Recommendations address, a discharged Laboratory employee alleged in part that his termination violated the Americans with Disabilities Act. In a posthearing brief, the Laboratory asserted, without citation of authority or reference to the Manual, that the hearing officer could not decide this claim because he "ha[d] no jurisdiction to interpret or enforce federal law . . . ." In the Report and Recommendations, the non-Laboratory hearing officer apparently accepted this argument, stating: "[T]he grievance is limited to claims arising under the Manual. An employee who wants to pursue claims arising under federal

---

[8]Bockover attaches copies of these documents, which were created after she filed her opening brief on appeal, to her reply brief and requests that we judicially notice them. We grant the request.

[9]Respondents contend that we should not address this issue because Bockover did not raise it in the trial court or in her opening brief. However, because the issue depends on documents that did not exist until after filing of the opening brief and is one of law, we will address it. (See *Meier* v. *Ross General Hospital* (1968) 69 Cal.2d 420, 423-424, fn. 1 [71 Cal.Rptr. 903, 445 P.2d 519]; *Sanchez* v. *Truck Ins. Exchange* (1994) 21 Cal.App.4th 1778, 1787 [26 Cal.Rptr.2d 812].) We accordingly deny respondents' request to strike or disregard these documents and references to them in the reply brief. However, we grant respondents' alternative request for consideration of their supplemental response addressing the issue and for judicial notice of additional excerpts from the Manual.

and/or state statutes or other external sources must look to other fora for a remedy."

We find that these documents do not render the exhaustion rule inapplicable. As we previously explained, where there is some question as to the applicability of an agency's grievance process, the claimant must "present the question to the [agency] so that [it can] decide the issue in the first instance." (*Morton* v. *Superior Court, supra,* 9 Cal.App.3d at p. 982.) The documents from the other matter that Bockover has submitted do not relieve her of this requirement. Those seeking recovery in court must first exhaust administrative remedies unless they "can positively state that the [agency] has declared what its ruling will be *in the particular case . . . .*" (*Gantner & Mattern Co.* v. *California E. Com.* (1941) 17 Cal.2d 314, 318 [109 P.2d 932], italics added.) "A court 'cannot presume' that an administrator[,] having adopted a particular rule or policy in like cases in the past, would necessarily have applied the same rule' in the next case. [Citation.]" (*In re Serna* (1978) 76 Cal.App.3d 1010, 1014 [143 Cal.Rptr. 350] [quoting *Gantner*].) Here, we cannot presume that either the Laboratory or a hearing body would find that Bockover's claim falls outside of the grievance procedure's scope.[10]

Nor do we find that the cases Bockover cites support her position that, because her claim involves a federal regulation, it is beyond the jurisdiction of the Laboratory's grievance procedure. Three of those cases involve claims under the federal Civil Rights Act (42 U.S.C. § 1983) and collectively hold that a state cannot impair this federal claim by imposing substantive limitations or creating judicial or administrative remedies that claimants must exhaust. (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 841-842 [129 Cal.Rptr. 453, 548 P.2d 1125]; *Best* v. *California Apprenticeship Council* (1987) 193 Cal.App.3d 1448, 1465 [240 Cal.Rptr. 1]; *Logan* v. *Southern Cal. Rapid Transit Dist.* (1982) 136 Cal.App.3d 116, 124 [185 Cal.Rptr. 878].) This exception to the exhaustion requirement prevents frustration of "the purposes underlying [the federal Civil Rights Act]—i.e., to serve as an antidote to discriminatory state laws, to protect federal rights where state law is inadequate, and to protect federal rights where state processes are available in theory but not in practice [citation] . . . ." (*Williams, supra,* at p. 841.) Bockover's action does not implicate these, or similar, concerns. Thus, there is no reason to extend the exception to it. (See *Johnpoll* v. *Thornburgh* (2d

---

[10]The difference between Bockover's claim and the claim at issue in the other matter renders this rule particularly applicable. As previously indicated, the other matter involved a claim under the Americans with Disabilities Act, which provides a separate statutory framework for recovery. By contrast, Bockover alleged in her amended complaint that DOE order No. 3220.5 "became a part of the contract of employment between [the Laboratory] and [her]." Thus, her action does not depend on the type of "external sources" at issue in the other matter.

Cir. 1990) 898 F.2d 849, 850-851, fn. 1; *Baker v. Kaiser Aluminum and Chemical Corp.* (N.D.Cal. 1984) 608 F.Supp. 1315, 1322, fn. 1 [exception "applies only to actions brought pursuant to 42 U.S.C. § 1983"].)

The other case Bockover cites, *Rojo v. Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373], supports our conclusion that she should have invoked the Laboratory's grievance procedure before filing suit. In *Rojo*, the Supreme Court held that an employee who has a statutory claim under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (Act), which establishes an administrative process for resolving statutory claims, "need not exhaust the administrative process under the [A]ct before resort to judicial relief for nonstatutory causes of action . . . ." (*Rojo, supra,* 52 Cal.3d at p. 70.) In reaching this conclusion, the court distinguished statutes that both create substantive rights and administrative remedies for enforcement of those rights, from "[t]he 'context' . . . where the party or entity whose 'quasi-judicial' determination is challenged—be it hospital, voluntary private or professional association, or public entity—has provided an internal remedy. [Citations.]" (52 Cal.3d at p. 86.) In the latter context, "[t]he reason for the exhaustion requirement . . . is plain. . . . '. . . [T]he association itself should in the first instance pass on the merits of an individual's application rather than shift this burden to the courts. . . .' " (*Ibid.*) This case, of course, involves an entity that "has provided an internal remedy. [Citations.]" (*Ibid.*) Bockover should have invoked that remedy before filing suit.[11]

The judgment is affirmed.

White, P. J., and Merrill, J., concurred.

---

[11]One of the very cases Bockover cites proves the overbreadth of her assertion that "[a] plaintiff need not exhaust state mandated administrative remedies before bringing a federal cause of action . . . ." In *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 217 [188 Cal.Rptr. 115, 655 P.2d 317], the Supreme Court held that plaintiff had to exhaust administrative remedies "[w]ith respect to [her] charge that her First Amendment rights were violated," explaining that she failed to demonstrate that "this issue was beyond the scope of grievance resolution."