Filed 1/15/14  Clearvue Opportunity II v. City of Los Angeles CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CLEARVUE OPPORTUNITY II, LLC, | B245626 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC449222) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Suzanne G. Bruguera, Judge.  Affirmed.

Shulman Bunn and Richard A. Bunn for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Tayo A. Popoola and Alan W. Blackman, Deputy City Attorneys for Defendant and Respondent.

Clearvue Opportunity II, LLC (appellant) appeals from a final judgment entered after the trial court sustained without leave to amend a demurrer to appellant's fifth cause of action against the City of Los Angeles (City).

## CONTENTIONS

Appellant contends that the trial court erred in sustaining the City's demurrer on the ground that appellant failed to exhaust its administrative remedies. Specifically, appellant contends that the doctrine of exhaustion of administrative remedies does not apply because no adequate administrative remedy is provided by the Los Angeles Municipal Code (LAMC).

## FACTUAL BACKGROUND

Appellant's first amended complaint (FAC) contains the following allegations: on or about June 3, 2003, Community Bank transferred parcel No. 5183-027-006, commonly known as 2320 Rogers Avenue in Los Angeles (the Rogers property), to Martin and Theresa Marquez (collectively "Marquez"). The Rogers property is the north half of lot 26. On or about June 1, 2004, Marquez, who owned the south half of lot 26, commonly known as 2323 Whittier Boulevard (the Whittier property), transferred lot 26 to Marquez and Jose Luis Rodriguez (Rodriguez) via a grant deed, effectively combining the Rogers and Whittier properties.

On May 2, 2005, a covenant and agreement to hold lot 26 as one parcel was recorded as document 2005-1036849. According to the allegations in the FAC, the covenant was executed by Marquez and Rodriguez in order to comply with building codes and be granted a permit to build on the lot.

On or about May 27, 2005, Marquez and Rodriguez secured a loan for $306,000. The deed of trust securing the indebtedness indicated that the security is parcel No. 5183-027-005, the Whittier property. However, the legal description of the property in the deed of trust erroneously included the totality of lot 26, not just the south one-half of the property which is what was intended. The indebtedness was subsequently transferred to U.S. Bank.

2

On or about March 22, 2006, Marquez and Rodriguez borrowed the sum of $210,609 from Ameriquest. The debt was secured by a deed of trust on the Rogers property. However, the legal description of the property in the deed of trust erroneously included the totality of lot 26, not just the northern one-half of the lot. The beneficial interest of the 2006 deed of trust was transferred to appellant. The assignment was recorded on June 11, 2010, as Instrument No. 20100799342.

Both the loan on the Whittier property and the loan on the Rogers property are now in default.

**PROCEDURAL HISTORY**

On November 10, 2010, appellant filed an unlimited civil action with causes of action for (1) quiet title; (2) declaratory relief; (3) reformation of instruments; (4) judicial foreclosure; and (5) cancellation of instrument. The only cause of action alleged against the City was the fifth cause of action for cancellation of covenant. In that cause of action, appellant sought cancellation of the covenant and agreement to hold the property as one parcel. Appellant alleged that the covenant should be cancelled for two reasons: (1) it was entered into in error by all parties; and (2) it is invalid because not all necessary parties executed it. Appellant alleged that if the covenant is left outstanding, appellant's security interest in the Rogers property is jeopardized.

On April 16, 2012, the trial court sustained the City's demurrer to the fifth cause of action on the ground that appellant failed to exhaust its administrative remedies. Appellant was granted 10 days leave to amend.

On April 26, 2012, appellant served its FAC on the City. Appellant added an allegation that it was not required to exhaust any administrative remedy because the doctrine of exhaustion of administrative remedies is inapplicable where the administrative remedy is inadequate or where it is unavailable. Appellant claimed that LAMC sections 98.0403.2(b) and 12.26K contradict each other. Appellant argued that the "self-contradictory" provisions excuse appellant from exhausting its administrative remedy.

3

On September 27, 2012, the trial court sustained the City's demurrer to the fifth cause of action in the FAC without leave to amend. On October 9, the trial court entered judgment dismissing the City with prejudice.

On December 7, 2012, appellant filed its notice of appeal.

## DISCUSSION

### I. Standard of review

On appeal from a judgment of dismissal after a demurrer is sustained without leave to amend, we review the legal sufficiency of the complaint de novo. (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790.) "The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967.)

### II. Rule of exhaustion of administrative remedies

The rule of exhaustion of administrative remedies is well established in California jurisprudence. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 (*Campbell*).) "In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292 (*Abelleira*).) The rule "is not a matter of judicial discretion, but is a fundamental rule of procedure . . . binding upon all courts." (*Id.* at p. 293.) "Exhaustion of *administrative* remedies is 'a jurisdictional prerequisite to resort to the courts.' [Citation.]" (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70 (*Johnson*).)

4

"The rule has important benefits:  (1) it serves the salutary function of mitigating damages; (2) it recognizes the quasi-judicial tribunal's expertise; and (3) it promotes judicial economy by unearthing the relevant evidence and by providing a record should there be a review of the case.  [Citation.]"  (*Campbell, supra*, 35 Cal.4th at p. 322.)

The administrative remedies exhaustion rule has exceptions, including an exception where the administrative agency does not provide an adequate remedy.  (*Campbell, supra*, 35 Cal.4th at p. 322.)  The administrative remedy must comport with due process.  (*Bockover v. Perko* (1994) 28 Cal.App.4th 479, 486 (*Bockover*).)  In addition, there is an exception to the exhaustion requirement where it is futile to pursue the administrative remedy.  (*Automotive Management Group, Inc. v. New Motor Vehicle Bd.* (1993) 20 Cal.App.4th 1002, 1015 [automobile dealer which protested its termination as a franchised dealer was not required to pursue further administrative remedies where the administrative law judge stated "'*There shall be no further proceedings in this cause before the Board*'" (italics added)].)

In *Bockover*, one of the plaintiff's arguments was that her employer's policy and procedure manual was ambiguous concerning grievance procedures.  (*Bockover, supra*, 28 Cal.App.4th at pp. 489-490.)  Despite the possible ambiguity concerning the procedures, the court held "[w]here there is some 'question about the applicability of [a] grievance procedure,' the employee must 'present the question to the [agency] so that [it can] decide the issue in the first instance.'  [Citation.]"  (*Id.* at p. 490.)  Thus, a plaintiff's "'preconception of the futility of administrative action [does] not permit [her] to bypass the administrative remedy.  [Citation.]'  [Citation.]"  (*Ibid*.)

The exhaustion doctrine operates as a defense to litigation commenced by persons who have been aggrieved by action but who have failed to exhaust the administrative remedy available to them.  (*Anthony v. Snyder* (2004) 116 Cal.App.4th 643, 657 [holding that landowner had obligation to exhaust administrative proceedings before bringing litigation to enforce a subdivision improvement agreement].)

5

### III. Administrative procedures available to appellant

The covenant at issue indicates on its face that the Los Angeles Department of Building and Safety (DBS) is the agency with authority over the subject matter of the covenant. First, the covenant specifies that it shall "continue in effect until released by the authority of the Superintendent of Building of the City of Los Angeles upon submittal of request, applicable fees and evidence that this Covenant and agreement is no longer required by law."[1] In addition, the covenant was required to be approved by the DBS prior to recording. These references make clear that the agency in charge of the covenant is the DBS.

Administrative remedies are available to appellant. First, as set forth in the covenant itself, the Superintendent of Building has the authority to release the covenant upon submission of a request, applicable fees and evidence that the covenant is no longer necessary. Appellant has not alleged that it made any such request to the Superintendent.

The LAMC further provides a means for review of the decision of the Superintendent. A party may appeal the decision of a DBS official to the Los Angeles Board of Building and Safety Commissioners (Board). The Board has the power to hear and determine appeals from "orders, interpretations, requirements, determinations, or actions of the Department pertaining to enforcement of specific ordinances, regulations, or laws in site-specific cases." (LAMC, § 98.0403.1(b)(2).)

Pursuant to the well-established doctrine of exhaustion of administrative remedies, appellant must pursue this administrative relief before the courts will act. (*Abelleira, supra*, 17 Cal.2d at p. 292.)

### IV. Appellant is not excused from pursuing administrative remedies in this case

Appellant has not alleged that it made any effort to pursue administrative relief in this matter. Instead, appellant argues that it should be excused from pursuing

---

[1] According to the administrative organizational chart found on the DBS website, the Superintendent of Building is the general manager of the DBS. (See ladbs.org, "About Us" tab, Organization Chart; see also LAMC, § 98.0103(a).)

administrative relief due to the exception to the exhaustion doctrine that applies where the administrative agency does not provide an adequate remedy.

In support of this position, appellant points to alleged contradictions in the LAMC. First, in spite of the language contained within the covenant itself, appellant insists that it is the Office of Zoning Administration that is responsible for handling subdivision and merger of parcels.[2] Thus, appellant argues, chapter I of the LAMC -- dealing with "General Provisions and Zoning," including the Subdivision Map Act -- is the applicable chapter of the LAMC; not chapter IX, which governs the DBS.

According to appellant, since the dispute is governed by chapter I of LAMC, appellant is presented with an insurmountable conflict. Appellant points to LAMC section 98.0403.1(b),[3] which states:

> "[T]he Board[4] shall have no authority to hear and determine appeals from orders, interpretations, requirements, determinations, or actions of the Department pertaining to enforcement of specific ordinances, regulations, or laws contained in Chapter I of this Code and in other land use ordinances. Any appeal concerning these requirements shall be made to the Director of Planning in accordance with the provisions set forth in Section 12.26K."

Appellant then cites LAMC, section 12.26 K, which reads, in part:

> "An appeal to the Director of Planning may only be made after the Department of Building and Safety has rendered a decision in writing and

---

[2] In spite of its insistence that the Office of Zoning Administration is the entity responsible for the covenant, appellant has failed to set forth any allegations that it ever applied to the Office of Zoning Administration for cancellation of the covenant.

[3] Appellant has cited to LAMC section 98.0403.2(b) throughout its opening brief. We assume appellant intended to cite to LAMC section 98.0403.1(b), which contains the quoted language.

[4] Adding confusion to its argument, appellant has included a parenthetical referring to the "Board" as the "Board [of Building and Safety]." Appellant confuses two distinct entities: the DBS, and the Board of Building and Safety Commissioners. (LAMC, § 98.0103.) Under the statutory scheme, the Board has the authority to review decisions of the DBS *except* those concerning chapter I. (LAMC, § 98.0403.1(b).)

7

provided written justification and findings on an appeal made pursuant to Section 98.0403.2(a) of the Code."

Appellant argues that these two provisions are contradictory, rendering the proposed administrative remedy futile. On the one hand, appellant asserts, the DBS has no jurisdiction to hear appeals concerning chapter I. On the other hand, one is barred from pursuing a grievance before the Office of Zoning Administration unless he has made an appeal to the Director of Planning, who has no power to hear issues falling under chapter I of the LAMC unless an appeal has been made to the DBS.

Appellant cites to no case law suggesting that a perceived statutory conflict renders an administrative remedy inadequate.[5]  As set forth in *Bockover*, a party's "'preconception of the futility of administrative action [does] not permit [her] to bypass the administrative remedy. [Citation.]' [Citation.]" (*Bockover, supra*, 28 Cal.App.4th at p. 490.) Appellant cannot know whether the administrative remedy is inadequate if appellant has never attempted to pursue that remedy. If appellant perceives a contradiction regarding the appropriate agency to handle a future administrative appeal, appellant must "'present the question to the [agency] so that [it can] decide the issue in the first instance.' [Citation.]" (*Ibid.*). Appellant has not done so, therefore the courts have no jurisdiction to consider appellant's claim. (*Johnson, supra*, 24 Cal.4th at p. 70.)

---

[5]  *Rosenfield v. Malcolm* (1967) 65 Cal.2d 559 (*Rosenfield*) does not support appellant's position. In *Rosenfield*, the court considered whether a county employee who claimed to have been wrongfully terminated exhausted his administrative remedies pursuant to Alameda County Charter sections 42 and 44. While those sections provided a general investigative power, they contained no "clearly defined machinery for the submission, evaluation and resolution of complaints by aggrieved parties." (*Rosenfield*, at p. 566.) The *Rosenfield* court stressed that "[o]ur courts have repeatedly held that the mere possession by some official body of a continuing supervisory or investigatory power does not itself suffice to afford an 'administrative remedy.'" (*Ibid.*) The City's administrative scheme, in contrast, provides for more than supervision and investigation. It provides procedures for the submission and evaluation of complaints. Appellant must avail itself of these administrative procedures.

Even if we had jurisdiction to consider the purported statutory conflict that appellant has raised, we would decline to address it because appellant has not presented a justiciable controversy regarding this purported statutory conflict. Appellant has not alleged that it ever made any attempt to pursue an administrative remedy with any agency. Therefore it goes without saying that appellant has never filed an appeal with any administrative entity. Nor has any administrative entity ever rejected an administrative appeal filed by appellant on the ground that it lacked authority to hear the claim. The courts do not decide purely academic questions. (*B. C. Cotton, Inc. v. Voss* (1995) 33 Cal.App.4th 929, 947-948 ["Courts are created to resolve cases and controversies and not to render advisory opinions or resolve questions of purely academic interest"].) Appellant's argument is not relevant to any ripe controversy. (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 59 ["According to the Supreme Court, 'an action not founded upon an actual controversy between the parties to it, and brought for the purpose of securing a determination of a point of law . . . will not be entertained'"].)[6]

---

[6] While we will not resolve the purported statutory conflict, we note that we disagree with appellant's position that the two statutes are necessarily contradictory. The LAMC clearly delineates powers of the DBS, which provides the first level of decisionmaking explained in LAMC section 98.0403.1(a). In section 98.0403.1(b), it then describes the power of the Board, which includes the power to review acts of the DBS, and requires that the DBS provide the Board with a written report on the appeal.

Similarly, LAMC section 98.0403.2(a) describes the procedures for bringing a claim before the DBS, and section 98.0403.2(b) describes procedures for bringing a claim before the Board.

LAMC Section 12.26K provides that the Director of Planning may investigate and make decisions upon determinations of the DBS concerning chapter I. As set forth in LAMC section 98.0403.1(b), the Board has no authority to review actions of the DBS falling under this chapter. However, as with an appeal to the Board, section 12.26K provides that the DBS must provide written justification and findings on the appeal. Section 12.26K specifies that the decision of the DBS must have been made pursuant to the procedures outlined in section 98.0403.2(a).

Given this statutory scheme, it appears that whether the claim arises from chapters I or IX, a party must present its claim to the DBS in the first instance pursuant to the procedures set forth in section 98.0403.2(a). The party must then receive a decision in writing setting forth the DBS's findings. Those findings would likely dictate whether the review of the DBS's decision is within the jurisdiction of the Director of Planning (on

9

Because appellant has failed to allege facts showing that it exhausted its administrative remedy, and does not suggest that it can amend its complaint to allege any such facts, its claim against the City must fail as a matter of law.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.*
FERNS

---

issues arising under chapter I of the LAMC), rather than the Board.  Under this interpretation of the statutory scheme, appellant's hypothetical conflict would never arise.

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.