Filed 6/29/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| HILL RHF HOUSING PARTNERS, L.P., et al., | B295181 |
| Petitioners and Appellants, | (Los Angeles County Super. Ct. No. BS170127) |
| v. | |
| CITY OF LOS ANGELES, et al., | |
| Objectors and Respondents. | |
| MESA RHF PARTNERS, L.P., | B295315 |
| Petitioner and Appellant, | (Los Angeles County Super. Ct. No. BS170352) |
| v. | |
| CITY OF LOS ANGELES, et al., | |
| Objectors and Respondents. | |

APPEALS from judgments of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Reuben Raucher & Blum, Timothy D. Reuben and Stephen L. Raucher for Petitioners and Appellants.

Michael N. Feuer, City Attorney, Beverly A. Cook, Assistant City Attorney, and Daniel M. Whitley, Deputy City Attorney, for Objector and Respondent City of Los Angeles.

Colantuono, Highsmith & Whatley, Michael G. Colantuono, Holly O. Whatley, and Pamela K. Graham for Objectors and Respondents Downtown Center Business Improvement District Management Corporation and San Pedro Property Owners Alliance.

_____

Hill RHF Housing Partners, L.P. (Hill), Hill Olive Housing Partners, L.P. (Olive), and Mesa RHF Partners, L.P. (Mesa) appeal from judgments entered after the trial court denied petitions for writ of mandate and related declaratory and injunctive relief challenging the City of Los Angeles's June 2017 establishment of the Downtown Center Business Improvement District (DCBID) and the San Pedro Historic Waterfront Business Improvement District (SPBID) (collectively, the BIDs).

"The Property and Business Improvement District Law of 1994 (Sts. & Hy. Code, §§ 36600 et seq.) [PBID Law] authorizes cities to establish property and business improvement districts . . . in order to levy assessments on real property . . . ."[1] (*Epstein v. Hollywood Entertainment Dist. II Business*

---

[1] The assessments are intended, among other things, to "promote the economic revitalization and physical maintenance of business districts in order to create jobs, attract new businesses,

*Improvement Dist.* (2001) 87 Cal.App.4th 862, 865.)  Proposition 218 added article XIII D to the California Constitution in part to restrict cities' abilities to levy these and other assessments. (*Apartment Ass'n of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 831, 837.)

Together, article XIII D and the PBID Law establish a comprehensive procedure cities must follow to create a business improvement district.[2]  That procedure includes opportunities for property owners in proposed assessment districts to state their objections to proposed assessments, and a requirement that those objections be considered before levying an assessment.  Hill, Olive, and Mesa opposed the establishment of the BIDs, but did not avail themselves of any of the opportunities they had to create a record of the reasons for their objection.  They then challenged the establishment of the BIDs in court by filing petitions for writ of mandate and complaints for injunctive and declaratory relief.  The City and the BIDs opposed Hill, Olive, and Mesa's petitions on the merits, but also argued that Hill, Olive, and Mesa failed to exhaust their administrative remedies before seeking judicial intervention.

The trial court denied Hill, Olive, and Mesa's petitions on the merits.  We view exhaustion of administrative remedies, however, as a threshold question.  Because we agree with the City and the BIDs that Hill, Olive, and Mesa were required to exhaust administrative remedies before seeking judicial

---

and prevent the erosion of the business districts."  (Sts. & Hy. Code, § 36601, subd. (b).)

[2] Unspecified references to "article" refer to articles of the California Constitution.

intervention and that they failed to do so, we affirm the trial court's judgments on that ground and decline to reach Hill, Olive, and Mesa's arguments on the merits.

## BACKGROUND

In April and May 2017, the City of Los Angeles adopted ordinances declaring its intent to create the DCBID and the SPBID based on engineers' reports and management district plans referenced in the ordinances.[3] Hill and Olive own residential rental property for low-income seniors located in the district boundaries of the DCBID. Mesa owns residential rental property for low-income seniors inside the boundaries of the SPBID.

The City mailed notices to owners of property inside the BIDs of the public hearings at which it intended to consider the establishment of the BIDs. The notices included summaries of the management district plans for each BID, assessment ballots, and summaries of procedures for completing, returning, and tabulation of assessment ballots. Hill and Olive returned ballots to the City opposing the establishment of the DCBID, and Mesa returned a ballot opposing the establishment of the SPBID.[4]

---

[3] DCBID consists of "approximately 65 blocks of the west, northwestern and central downtown area of Los Angeles . . . ." SPBID consists of "approximately 30 blocks of primarily commercial property in central downtown San Pedro . . . ."

[4] The prescribed administrative process for establishment of a BID allows property owners to submit votes either in favor of or opposing the establishment of the BID. (Cal. Const., art. XIII D, § 4, subd. (c); Gov. Code, § 53753, subd. (b).) If the "ballots submitted in opposition to the assessment exceed the ballots submitted in favor of the assessment," that is considered a "majority protest," and no assessment may be imposed. (Cal.

4

The City held the noticed public hearings—on June 7, 2017 for the DCBID and June 27, 2017 for the SPBID. For the DCBID, there were no "valid written protests received," and four speaker cards received. For SPBID, there were no written protests received, and two speaker cards.[5]

Based on the public hearings and the ballots tabulated after those hearings, the City created by ordinance the DCBID and the SPBID for terms to begin January 1, 2018. The DCBID's assessments were to fund three components: (1) "Clean and Safe Programs," (2) economic development and marketing programs, and (3) BID management. The SPBID's assessments were to fund four components: (1) visitor, "Ambassador," and security services, (2) sanitation, beautification, and capital improvements, (3) marketing and special events, and (4) BID management.

On July 3, 2017, Hill and Olive filed a petition for writ of mandate and complaint for declaratory and injunctive relief

---

Const., art. XIII D, § 4, subd. (e).) The administrative process also requires that the agency hold a public hearing, at which "any person shall be permitted to present written or oral testimony." (Gov. Code, § 53753, subd. (d).) When documenting the hearing, the City referred to ballots as either "supporting" or "opposing," and referred to the "written . . . testimony" contemplated by Government Code section 53753, subdivision (d) as "written protest."

[5] The record contains no evidence regarding the identity of the speakers at the DCBID hearing. According to the speaker cards submitted for the SPBID hearing, neither of the speakers represented Mesa. The record is silent regarding the content of the speakers' presentations. Neither Hill, Olive, nor Mesa allege they submitted written protests or had representatives speak at the public hearings regarding the BIDs' establishment.

5

against the City challenging the establishment of the DCBID. On July 26, 2017, Mesa filed a petition for writ of mandate and complaint for declaratory and injunctive relief against the City challenging the establishment of the SPBID. Hill, Olive, and Mesa's contentions center largely on the definition of "special benefit" as distinct from "general benefit" as those terms are used and defined in the PBID Law and article XIII D, as clarified by the Supreme Court in *Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431 (*Silicon Valley*). Among other arguments, Hill, Olive, and Mesa raised facial challenges to the constitutionality of amendments to the PBID Law the Legislature made after *Silicon Valley*. Hill, Olive, and Mesa also argued that if the benefits the BIDs conveyed were special benefits, the City improperly failed to consider and account for unique characteristics about *their* properties (separate and apart from each other parcel in each BID) that would affect the value to the parcel of the benefit conveyed. Finally, Hill, Olive, and Mesa challenged the BIDs' quantification methods, alleging that attributions between special and general benefits were based on evidence that was not solid and credible. Each of the petitions alleges exhaustion of administrative remedies. Each of the City's answers alleges "failure to exhaust administrative remedies and/or identify issues of dispute prior to bringing suit in Superior Court" as an affirmative defense. And the City and BIDs briefed exhaustion of administrative remedies in their trial briefs.

On September 19, 2018, the trial court heard argument on the petitions. The trial court inquired about—and the parties argued—exhaustion of administrative remedies during the hearing.

6

The trial court issued orders on October 30, 2018 (Hill and Olive) and October 31, 2018 (Mesa) denying the petitions and the requested injunctive and declaratory relief on the merits. Neither of the orders mentions exhaustion of administrative remedies.

The trial court entered judgments on December 3, 2018 (Hill and Olive) and December 19, 2018 (Mesa) based on its orders. Hill, Olive, and Mesa filed timely notices of appeal.

## DISCUSSION

### A. Relevant BID Procedural Requirements

Article XIII D requires that the record owner of a parcel in a proposed business improvement district "be given written notice by mail of the proposed assessment, the total amount thereof chargeable to the entire district, the amount chargeable to the owner's particular parcel, the duration of the payments, the reason for the assessment and the basis upon which the amount of the proposed assessment was calculated, together with the date, time, and location of a public hearing on the proposed assessment. Each notice shall also include, in a conspicuous place thereon, a summary of the procedures applicable to the completion, return, and tabulation of the ballots . . . , including a disclosure statement that the existence of a majority protest . . . will result in the assessment not being imposed." (Cal. Const., art. XIII D, § 4, subd. (c).)

The Constitution requires that the agency proposing to levy the assessment "conduct a public hearing upon the proposed assessment not less than 45 days after mailing the notice of the proposed assessment to record owners of each identified parcel. At the public hearing, the agency shall consider all protests against the proposed assessment and tabulate the ballots. The

agency shall not impose an assessment if there is a majority protest. A majority protest exists if, upon the conclusion of the hearing, ballots submitted in opposition to the assessment exceed the ballots submitted in favor of the assessment. In tabulating the ballots, the ballots shall be weighted according to the proportional financial obligation of the affected property." (Cal. Const., art. XIII D, § 4, subd. (e).)

The PBID Law also imposes a host of administrative requirements on an agency considering levying an assessment. Specifically, for a new or increased property assessment, the PBID Law requires a "notice and protest and hearing procedure [that] compl[ies] with Section 53753 of the Government Code." (Sts. & Hy. Code, § 36623, subd. (a).)

Government Code section 53753 requires the agency to "give notice by mail to the record owner of each identified parcel. Each notice shall include the total amount of the proposed assessment . . . and the basis upon which the amount of the proposed assessment was calculated, and the date, time, and location of a public hearing on the proposed assessment. Each notice shall also include, in a conspicuous place thereon, a summary of the procedures for the completion, return, and tabulation of the assessment ballots required . . . , including a statement that the assessment shall not be imposed if the ballots submitted in opposition to the assessment exceed the ballots submitted in favor of the assessment, with ballots weighted according to the proportional financial obligation of the affected property. An agency shall give notice by mail at least 45 days prior to the date of the public hearing upon the proposed assessment." (Gov. Code, § 53753, subd. (b).)

8

"At the time, date, and place stated in the notice mailed pursuant to subdivision (b), the agency shall conduct a public hearing upon the proposed assessment.  *At the public hearing, the agency shall consider all objections or protests, if any, to the proposed assessment.  At the public hearing, any person shall be permitted to present written or oral testimony.  The public hearing may be continued from time to time.*"  (Gov. Code, § 53753, subd. (d), italics added.)

"At the conclusion of the public hearing . . . , an impartial person designated by the agency who does not have a vested interest in the outcome of the proposed assessment shall tabulate the assessment ballots submitted, and not withdrawn, in support of or opposition to the proposed assessment. . . ."  (Gov. Code, § 53753, subd. (e)(1).)  "A majority protest exists if the assessment ballots submitted, and not withdrawn, in opposition to the proposed assessment exceed the assessment ballots submitted, and not withdrawn, in its favor, weighting those assessment ballots by the amount of the proposed assessment to be imposed upon the identified parcel for which each assessment ballot was submitted.  [¶] . . .  If there is a majority protest against the imposition of a new assessment, or the extension of an existing assessment, or an increase in an existing assessment, *the agency shall not impose, extend, or increase the assessment.*"  (Gov. Code, § 53753, subd. (e)(4) & (5), italics added.)[6]

---

[6] Neither the record nor the parties' arguments contain any allegation that the City failed to comply with the procedural requirements set forth in section 4 of article XIII D, Streets and Highways Code section 36623, and Government Code section 53753.

9

## B. Exhaustion of Administrative Remedies

"The question whether the doctrine of exhaustion of administrative remedies applies in a given case raises legal issues, which we review de novo." (*Evans v. City of San Jose* (2005) 128 Cal.App.4th 1123, 1136.)

"Generally, 'a party must exhaust administrative remedies before resorting to the courts. . . .' " (*Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 382.) The Supreme Court has "inferred an exhaustion requirement even within statutory schemes that ' "do not make the exhaustion of the [administrative] remedy a condition of the right to resort to the courts." ' " (*Williams & Fickett v. County of Fresno* (2017) 2 Cal.5th 1258, 1271 (*Williams & Fickett*).) "The general rule of exhaustion 'forbids a judicial action when administrative remedies have not been exhausted, even as to constitutional challenges . . . .' " (*Bockover v. Perko* (1994) 28 Cal.App.4th 479, 486.)

"[I]n California a requirement that administrative remedies be exhausted is jurisdictional."[7] (*California*

---

[7] " 'The concept of jurisdiction embraces a large number of ideas of similar character, some fundamental to the nature of any judicial system, some derived from the requirement of due process, some determined by the constitutional or statutory structure of a particular court, and some based upon mere procedural rules originally devised for convenience and efficiency, and by precedent made mandatory and jurisdictional.' " (*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 134, quoting *Abelleira v. District Court of Appeal, Third Dist.* (1941) 17 Cal.2d 280, 293.) In the exhaustion context, "jurisdictional" does not implicate subject matter or personal jurisdiction. Rather, it is " 'a fundamental rule of procedure laid down by courts of last resort,

*Correctional Peace Officers Assn. v. State Personnel Board* (1995) 10 Cal.4th 1133, 1151.) "The rule 'is not a matter of judicial discretion, but is a fundamental rule of procedure . . . binding upon all courts.' " (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 321.)

The general rule is that "[a]dministrative agencies must be given the opportunity to reach a reasoned and final conclusion on each and every issue upon which they have jurisdiction to act before those issues are raised in a judicial forum." (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 510.) "The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary)." (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 391.) "Even where the administrative remedy may not resolve all issues or provide the precise relief requested by a plaintiff, the exhaustion doctrine is still viewed with favor 'because it facilitates the development of a complete record that draws on administrative expertise and promotes judicial efficiency.' [Citation.] It can serve as a preliminary administrative sifting process [citation], unearthing the relevant evidence and providing a record which the court may review." (*Yamaha Motor Corp. v. Superior Court* (1986) 185 Cal.App.3d 1232, 1240.)

Hill, Olive, and Mesa posit that exhaustion is not required in the BID assessment context and alternately that they

---

followed under the doctrine of *stare decisis*, and binding upon all courts.' " (*Ibid.*)

11

exhausted their administrative remedies by submitting ballots opposing the City's proposed BID assessments.[8]  We disagree with both assertions.

As we have noted, the Supreme Court has "inferred an exhaustion requirement even within statutory schemes that ' "do not make the exhaustion of the [administrative] remedy a condition of the right to resort to the courts." ' " (*Williams & Fickett*, *supra*, 2 Cal.5th at p. 1271.)  The PBID Law's detailed administrative procedural requirements "provide affirmative indications of the Legislature's desire" that agencies be allowed to consider in the first instance issues raised during that process. (*Ibid.*)  As in *Williams & Fickett*, we conclude that the procedure outlined in the PBID Law "bespeaks a legislative determination that the [City] should, in the first instance, pass on" the questions Hill, Olive, and Mesa present in their petitions, "or decide that it need not do so." (*Ibid.*)

Neither are we persuaded that voting against the assessments without availing themselves of the PBID Law's comprehensive protest and hearing process constituted "exhaustion" of that process.  At argument, counsel for Hill, Olive, and Mesa contended that the Supreme Court through *Williams & Fickett* requires exhaustion only in circumstances where the statutory or constitutional provision creating an administrative process does not expressly articulate what behavior constitutes exhaustion.  Because the Constitution and statutes applicable here allow property owners to submit a ballot,

---

[8] Hill, Olive, and Mesa's contention that no exhaustion was required here is undermined by headings and allegations in each of their petitions that they had exhausted administrative remedies.

counsel argued, submitting a ballot opposing the establishment of the BID exhausts administrative remedies. *Williams & Fickett* does not support that contention.

In *Williams & Fickett*, the Supreme Court considered whether a taxpayer who asserted that they did not own a particular property must exhaust administrative remedies (that the statutory scheme detailed) or whether that requirement was obviated by the nullity exception—the exception to the exhaustion doctrine "where a tax assessment is 'a nullity as a matter of law.'" (*Williams & Fickett*, *supra*, 2 Cal.5th at p. 1264.) The administrative process at issue in that case—a property tax assessment appeal—*did* articulate the procedures a taxpayer needed to exhaust before invoking judicial process. (*Ibid.*) The taxpayer's argument was that it did not *need* to exhaust administrative remedies because doing so would not serve the exhaustion doctrine's purposes. (*Id.* at p. 1267.) The Supreme Court rejected the taxpayer's argument in *Williams & Fickett*, and explained that even where the taxpayer's challenge was not a question of valuation that implicated the local board's expertise, exhaustion was still required because the question presented was within the jurisdiction of the local board. (*Id.* at pp. 1268, 1270.)

The facts here present an even more compelling rationale for exhaustion. For just a "no" vote in the context of the remedies the statute provides to constitute exhaustion would frustrate the purpose of the exhaustion doctrine. "The doctrine of exhaustion of administrative remedies limits the scope of issues subject to judicial review to those that the administrative agency has had the opportunity to consider." (*Evans v. City of San Jose* (2005) 128 Cal.App.4th 1123, 1130 (*Evans*).) The doctrine "affords the public agency an 'opportunity to receive and respond to

articulated factual issues and legal theories before its actions are subjected to judicial review.' [Citation.] Thus, by presenting the issue to the administrative body, the agency 'will have had an opportunity to act and render the litigation unnecessary' [citation]; and, in so doing, 'lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the desired relief. . . .' [Citation.] Finally, the doctrine ' . . . facilitates the development of a complete record that draws on administrative expertise and promotes judicial efficiency.' " (*Leff v. City of Monterey Park* (1990) 218 Cal.App.3d 674, 681.)

Exhaustion of administrative remedies is not a pro forma exercise. "The purposes of the doctrine are not satisfied if the objections are not sufficiently specific so as to allow the [a]gency the opportunity to evaluate and respond to them. [Citation.] 'The essence of the exhaustion doctrine is the public agency's opportunity to receive and respond to articulated factual issues and legal theories *before* its actions are subjected to judicial review.' " (*Evans*, *supra*, 128 Cal.App.4th at p. 1138.)

The BID assessment process provides property owners at least 45 days' notice of the public hearing the PBID Law requires. At that hearing, the city is required to "consider all objections or protests," and at that hearing, "any person shall be permitted to present written or oral testimony." (Gov. Code, § 53753, subd. (d).) If a property owner presents factual issues or legal theories for the city's consideration that require more research, investigation, or development, "[t]he public hearing may be continued from time to time." (*Ibid*.)

While the process mandates that an assessment fail if there exists a majority protest, the process gives the city *discretion* to

14

pass or decline an assessment even if property owners' votes are sufficient to sustain the assessment. (Cal. Const., art. XIII D, § 4, subd. (e) ["[t]he agency shall not impose an assessment if there is a majority protest"]; Gov. Code, § 53753, subd. (e)(5) ["[i]f there is a majority protest . . . , the agency shall not impose . . . the assessment"].) If the agency's decision is to be challenged in court, the agency—the City in this context—is entitled to the benefit of the opportunity to either address the specific issues a property owner raises or to pass on the opportunity to do so and allow the courts to make a decision based on an administrative record that reflects a development of the disputed issues to the extent the administrative process allows. (See *Williams & Fickett, supra*, 2 Cal.5th at p. 1271.)

Exhaustion of administrative remedies in this context requires nothing more of a property owner than submitting a ballot opposing the assessment and presenting to the agency at the designated public hearing the specific reasons for its objection to the establishment of a BID in a manner the agency can consider and either incorporate into its decision or decline to act on. The administrative procedure outlined in the Constitution and the Government Code allows property owners to do that either orally or in writing at a public hearing called for the purpose of "consider[ing] all objections or protests . . . to the proposed assessment" and tabulating ballots. (Gov. Code, § 53753, subd. (d).) Because we conclude that Hill, Olive, and Mesa were required to exhaust administrative remedies before seeking judicial intervention—a threshold question in this case—and did not do so, we affirm the trial court's denial of the petitions for writs of mandate.

15

## DISPOSITION

The judgments are affirmed.  The respondents are entitled to their costs on appeal.

CERTIFIED FOR PUBLICATION


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


WHITE, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.